HOSTE v SHANTY CREEK MANAGEMENT, INC

Docket No. 108599. Argued December 10, 1998 (Calendar No. 9). Decided May 4, 1999. Rehearing denied 460 Mich 1201.

Lawrence J. Hoste suffered a spinal injury while forerunning a ski course at the Schuss Mountain ski resort as a member of the ski patrol. Shanty Creek Management, Inc., owner of the resort, initially paid worker's compensation. Eventually, it filed a notice of intent to stop payments on the ground that Hoste was not an employee. The plaintiff sought a hearing before a worker's compensation magistrate, who found that the plaintiff was entitled to medical expenses and worker's compensation from Shanty Creek and its insurer, Hartford Insurance Group, and that the Second Injury Fund was responsible for over ninety percent of weekly benefits under the dual employment provision of the worker's compensation act. The magistrate also held the fund liable for differential benefits. The Worker's Compensation Appellate Commission reversed. The Court of Appeals, WAHLS, P.J., and FITZGERALD and L. P. BORRELLO, JJ., reversed and remanded to the WCAC for reinstatement of the magistrate's award and to address apportionment of liability. 221 Mich App 144 (1997) (Docket No. 185014). The defendants appeal.

In an opinion by Justice TAYLOR, joined by Chief Justice WEAVER, and Justices BRICKLEY, CORRIGAN and YOUNG, the Supreme Court held:

The plaintiff was not an employee of Shanty Creek Management, Inc., under the Worker's Disability Compensation Act and therefore not entitled to worker's compensation.

1. The Worker's Disability Compensation Act defines who is an employee for purposes of the act. Subsections 161(1)(b) and 161(1)(d) are separate and necessary hurdles that each individual must clear in order to be considered an employee. Therefore, a proper reading of the statute requires that an individual's situation be examined under subsection 161(1)(b) in respect to the entity the individual is associated with and, under subsection 161(1)(d) with respect to the particular characteristics of that association, i.e., once an association with a private employer is found under subsec-

tion 161(1)(b), the characteristics of that association must meet the criteria found in subsection 161(1)(d).

2. In order to receive benefits under the WDCA, it is not enough to be employed pursuant to a contract; a person must be employed pursuant to a contract of hire, where the benefit received is payment intended as wages. In other words, worker's compensation provides benefits to persons who have lost a source of income; it does not provide benefits to persons who can no longer take advantage of a gratuity or privilege that serves merely as an accommodation. A person who is classified as an employee under the WDCA, receives only limited benefits and forfeits the right to exercise valuable tort rights. Accordingly, to satisfy the "of hire" requirement, compensation must be such real, palpable, and substantial consideration as would be expected to induce a reasonable person to give up the valuable right of a possible claim against the employer in a tort action and as would be expected to be understood as such by the employer.

3. The contract in this case was not one "of hire." The benefits did not represent payments intended as wages, i.e., the type of real, palpable, and substantial consideration that a reasonable person would accept in exchange for forgoing the right to bring a tort action against an employer and that would be understood as such by the employer. The plaintiff was a gratuitous worker, who was not an employee, but rather someone assisting another with a view toward furthering his own interests. No "contract of hire" existed between the plaintiff and Shanty Creek, and the plaintiff therefore was not an employee of Shanty Creek under subsection 161(1)(b). Thus, there is no reason to examine subsection 161(1)(d).

Reversed.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that the plaintiff was an employee of the defendant, a private for-profit corporation, under a contract of hire. The magistrate did not employ incorrect legal reasoning, and his findings of fact were supported by competent, material, and substantial evidence on the whole record. Accordingly, this case should be remanded to the WCAC to reinstate the benefits awarded by the magistrate, and to address the remaining issues not decided in its initial opinion.

The factual findings of a magistrate must be affirmed if they are supported by competent, material, and substantial evidence on the whole record. Substantial evidence in this context means such evidence, considering the whole record, as a reasonable mind would accept as adequate to justify the conclusion. MCL 418.861a(3); MSA 17.237(861a)(3). In this case, the magistrate made specific findings of fact and correctly applied general principles of contract law.

Subsection 161(1)(b) does not require an actual explicit contract. To the contrary, the Legislature specifically has provided that persons will be recognized as employees in the private sector if they act in the service of another under any contract of hire, express or implied.

The WCAC exceeded its authority. It substituted its view of the facts and its assessment of the contract question for the findings and conclusion of the magistrate. The benefits represent the real, palpable, and substantial consideration a reasonable person would accept in exchange for forgoing the right to bring a tort action.

The version of subsection 161(1)(a) in effect at the time of the plaintiff's injury specifically limited the types of volunteers who are to be considered employees. However, it explicitly applied only to public employees and should not be read to limit the effect of subsection 161(1)(b). Persons who agree to provide services in exchange for meaningful compensation should not be denied worker's compensation solely on the basis of their titles. Those labeled volunteers or who are members of a volunteer organization, even where the compensation is other than monetary, should not be denied benefits automatically. Nor should an employer refuse coverage on the ground that the worker might have performed the services gratuitously had the employer not provided or promised compensation.

The majority incorrectly links the inquiries in subsection 161(1)(b) and subsection 161(1)(d). Subsection 161(1)(d) was not inserted into the statute to modify the inquiry under subsection 161(1)(b); rather, it was included in order to cover certain persons who do not fall under the definition contained in subsection 161(1)(b). In particular, subsection 161(1)(d) deals with persons more properly classified as independent contractors rather than employees.

*Moceri, Hoste & Bejin, P.C.* (by *Douglas W. Hoste*); (*Daryl Royal*, of counsel), for the plaintiff-appellee.

*Cox, Hodgman & Giarmarco* (by *Marsha M. Woods* and *Wendy Zimmer Linehan*) for the defendants-appellants.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Mitchell J. Wood* and *Caleb B. Martin, Jr.*, Assistant Attorneys General, for Second Injury Fund.

Amicus Curiae:

Health Care Legal Group, P.C. (by *Frank Shoe-maker*), for Michigan Health and Hospital Association.

TAYLOR, J. Plaintiff, a member of the National Ski Patrol System, Inc. (NSPS),[1] suffered an injury while "forerunning" a course at Shanty Creek Management, Inc.'s Schuss Mountain ski resort in advance of a race. We granted leave to appeal to decide whether plaintiff was an "employee" as defined under the Worker's Disability Compensation Act of defendant Shanty Creek at the time of the injury. We hold that plaintiff was not an employee of Shanty Creek under the WDCA and therefore not entitled to worker's compensation benefits. We accordingly reverse the judgment of the Court of Appeals.

FACTS AND PROCEEDINGS

At the time of plaintiff's injury in January 1990, he was employed as a full-time journeyman electrician by Hoste Brothers, Inc. On weekends in the winter months, plaintiff, by virtue of his having been qualified for and thus securing membership in the NSPS, served as a ski patroller at the Schuss Mountain resort of Shanty Creek.

To join the local ski patrol at Shanty Creek, plaintiff was interviewed by the local ski patrol director. After he was selected, he was then scheduled by the local director for ski patrol duty at Shanty Creek.

---

[1] The NSPS is a federally chartered corporation, 36 USC 1501, organized under the laws of New York and Colorado.

On its application forms, the NSPS recognizes two categories of patrollers, "professional" and "volunteer." At the time of plaintiff's injury, Shanty Creek employed a "professional" NSPS patroller during the week at Schuss Mountain, while "volunteer" NSPS members provided patrolling services on weekends. Although none of the members of the weekend patrol received wages, each was accorded other benefits in exchange for services. The benefits included not having to pay for lift tickets, skiing privileges for family members, free hot beverages, and reduced prices on certain meals and merchandise.

In order to remain in good standing as a weekend patroller at Schuss Mountain, NSPS members were required to be at the resort at least half the days it was open for weekend skiing. Plaintiff testified that he usually reported for duty every weekend during the ski season.

The last weekend in January 1990 was no exception. In addition to the usual skiing activity, however, there was to be a race. According to plaintiff, he was asked by a resort employee to help check out the course in advance of the race. The purpose of such a "forerun" is to ensure the safety of the course and to set a track for the racers to follow. Plaintiff's injury occurred when he misjudged a gate at the bottom of a hill. It is undisputed that he is totally and permanently disabled.

Defendant Shanty Creek and its insurance carrier voluntarily paid worker's compensation benefits in connection with the injury until April 1990. At that time, they filed a notice of intent to stop payments on the basis that the plaintiff was not an employee of Shanty Creek.

Plaintiff subsequently filed an application for hearing or mediation. Hearings were held over the course of six days, and the magistrate considered deposition testimony as well. The magistrate found that plaintiff performed his patrolling duties under a "contract of hire" with Shanty Creek, and therefore he was an employee of Shanty Creek as defined under subsection 161(1)(b) of the WDCA.[2] The magistrate thus held that plaintiff was entitled to worker's compensation benefits and medical expenses from defendant Shanty Creek and its insurer, and that defendant Second Injury Fund was responsible for 91.6 percent of the weekly benefits of $427 under the "dual employment" provision of the WDCA.[3] The fund also was held liable for differential benefits.[4]

---

[2] At the time of plaintiff's injury, §161 provided in pertinent part:

(1) As used in this act, "employee" means:

(a) A person in the service of the state, a county, city, township, village, or school district, under any appointment, or contract of hire, express or implied, oral or written. . . .

(b) Every person in the service of another, under any contract of hire, express or implied, including aliens . . . .

(c) Every person engaged in a federally funded training program or work experience program which mandates the provision of appropriate worker's compensation for participants . . . .

(d) Every person performing service in the course of the trade, business, profession, or occupation of an employer at the time of the injury, provided the person in relation to this service does not maintain a separate business, does not hold himself or herself out to and render service to the public, and is not an employer subject to this act. [MCL 418.161; MSA 17.237(161).]

[3] MCL 418.372; MSA 17.237(372) applies when the injury suffered by a claimant precludes the claimant from working not only in the job in which the injury occurred, but also in another job.

[4] The "differential benefits" provision of MCL 418.521(2); MSA 17.237(521)(2) applies in the case of a claimant who is totally and permanently disabled.

Both Shanty Creek and the Second Injury Fund appealed to the WCAC. The WCAC reversed the finding of the magistrate that plaintiff was an employee of Shanty Creek, and accordingly held that he was not entitled to benefits under the WDCA. 1995 Mich ACO 612, 621. The WCAC reasoned that the magistrate erred in ending his analysis upon finding an implied contract of hire under subsection 161(1)(b), and instead, "a full application of § 161(1) to the particular facts" was required. *Id.* at 615. According to the WCAC, "§ 161(1) requires that an individual's situation must be examined in respect to both the entity they are associated with and the particular characteristics of that association." *Id.* The WCAC reasoned therefore that the magistrate "erred as a matter of law by merely finding an association ('implied contract of hire') with a private employer under § 161(1)(b) without examining the character of plaintiff's association with [Shanty Creek] under § 161(1)(d)." *Id.* at 615-616. Subsection 161(1)(d)[5] defined an employee as "[e]very person performing service in the course of the trade, business, profession, or occupation of an employer at the time of the injury," subject to the following exclusions:

> [P]rovided the person in relation to this service [1] does not maintain a separate business, [2] does not hold himself or herself out to and render service to the public, and [3] is not an employer subject to this act.

With regard to subsection 161(1)(d), the WCAC said that the eight-factor "economic reality" test described

---

[5] This provision now appears in MCL 418.161(1)(n); MSA 17.237(161)(1)(n).

in *McKissic v Bodine*, 42 Mich App 203; 201 NW2d
333 (1972),[6] on which the subsection was based,
should be used as a "tool for understanding and
applying the statute . . . ." 1995 Mich ACO 616. After
looking at each of the factors, the WCAC held that
plaintiff was not an employee, but rather "a volunteer
engaged in an accommodation relationship with
defendant ski resort. He was in essence a desirable
patron providing desirable services in exchange for
modest benefits. He was not 'hired' to perform these
services, as required under [the WDCA]." *Id.* at 620.

Plaintiff appealed in the Court of Appeals, which
granted his application for leave and reversed the
WCAC. The Court of Appeals did not discuss subsection 161(1)(b), other than to note that it was the

---

[6] The factors of the "economic reality" test as described in *McKissic*
are:

First, what liability, if any, does the employer incur in the event
of the termination of the relationship at will?

Second, is the work being performed an integral part of the
employer's business which contributes to the accomplishment of a
common objective?

Third, is the position or job of such a nature that the employee
primarily depends upon the emolument for payment of his living
expense?

Fourth, does the employee furnish his own equipment and
materials?

Fifth, does the individual seeking employment hold himself out
to the public as one ready and able to perform tasks of a given
nature?

Sixth, is the work or the undertaking in question customarily performed by an individual as an independent contractor?

Seventh, control, although abandoned as an exclusive criterion
upon which the relationship can be determined, is a factor to be
considered along with payment of wages, maintenance of discipline
and the right to engage or discharge employees.

Eighth, weight should be given to those factors which will most
favorably effectuate the objectives of the statute. [*Id.* at 208-209.]

basis of the magistrate's decision. Instead, the panel focused on subsection 161(1)(d) and the economic reality test, concluding that the WCAC had erred as a matter of law in its application of the eight *McKissic* factors. The Court of Appeals therefore remanded the matter to the WCAC to reinstate the benefits awarded by the magistrate and to address the remaining issues that were not decided by the WCAC in its initial opinion. 221 Mich App 144; 561 NW2d 106 (1997).

This Court denied defendants' applications for leave to appeal. 456 Mich 949 (1998). We subsequently granted reconsideration and vacated our earlier order, granting leave to appeal limited to the issue:

> [W]hether plaintiff, a member of the National Ski Patrol, is an employee of defendant Shanty Creek Management, Inc., within the meaning of the Worker's Disability Compensation Act. [458 Mich 865 (1998).]

### STANDARD OF REVIEW

This Court has the power to review questions of law involved in any final order of the WCAC. MCL 418.861; MSA 17.237(861); *Goff v Bil-Mar Foods, Inc (After Remand)*, 454 Mich 507, 512; 563 NW2d 214 (1997). The interpretation of statutes is a question of law. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). This Court reviews questions of law de novo, *Hagerman v Gencorp Automotive*, 457 Mich 720, 727; 579 NW2d 347 (1998), according great weight to the administrative interpretation of the statute unless such interpretation is clearly wrong. *Murphy v Michigan*, 418 Mich 341, 348-349; 343 NW2d 177 (1984);

*Schuhknecht v State Plumbing Bd*, 277 Mich 183, 186-187; 269 NW 136 (1936).[7]

DISCUSSION

A

Michigan's Worker's Disability Compensation Act requires that employers provide compensation to employees for injuries suffered in the course of the employee's employment, regardless of who is at fault. MCL 418.301; MSA 17.237(301). In return for this almost automatic liability, employees are limited in the amount of compensation they may collect, and, except in limited circumstances, may not bring a tort action against the employer. See MCL 418.131; MSA 17.237(131); Welch, Worker's Compensation in Michigan: Law & Practice (3d ed), § 1.2, pp 1-2 to 1-3. The statute also defines who is an "employee" in § 161, and by doing so determines which individuals have essentially traded the right to bring a tort action for the right to benefits.

---

[7] We agree with the dissent that whether a contract of hire exists is generally a question of fact. However, " '[e]rror may be committed by basing a finding of fact on a misconception of law and by failing to correctly apply the law to the finding of fact.' " *Price v Westland*, 451 Mich 329, 336-337; 547 NW2d 24 (1996). In addition, error may be committed when an erroneous legal standard or framework is employed or a decision is based on erroneous legal reasoning. *Hagerman, supra.* In such cases, de novo review is appropriate. *Id.* at 727, n 4; see also *Farrington v Total Petroleum, Inc*, 442 Mich 201, 214-225; 501 NW2d 76 (1993). As will become apparent below, in determining whether a contract of hire existed in this case, the magistrate, the WCAC, and the Court of Appeals all failed to consider the import of the statutory phrase "of hire" and thus operated within the wrong legal framework. For these reasons then, we believe the dissent mischaracterizes the issue as simply one of fact.

This case requires us to determine if plaintiff is such an "employee" under any of the definitions of "employee" contained in § 161 of the WDCA. Here, the parties agree that two of these definitions, subsections 161(1)(a) and (c), which relate to public employees and individuals involved in certain government training programs, do not apply. Accordingly, our analysis focuses on subsection 161(1)(b) and on subsection 161(1)(d).

The first issue we must address in our analysis is how to read the statute. Either subsection 161(1)(b) and subsection 161(1)(d) are separate and necessary hurdles each individual must clear in order to be considered an employee, or they are independent and unconnected, so that qualification under either one is sufficient to establish employee status. The WCAC held, we believe correctly, that the subsections were separate and necessary hurdles, and therefore a proper reading of "§ 161(1) requires that an individual's situation must be examined in respect to both the entity they are associated with [subsection 161(1)(b)] and the particular characteristics of that association [subsection 161(1)(d)]." *Id.* at 615. The Court of Appeals, by implication, held similarly when it did not dispute the legal framework used by the WCAC, but instead found error in the commission's application of the economic realities test. *Hoste, supra* at 149.

Early versions of the WDCA described an employee, with the exception of certain definitions applicable only to government workers, simply as a person under a "contract of hire." 1969 PA 317, MCL 418.161(1); MSA 17.237(161)(1). Because "employee" was not further defined, courts asked to distinguish between employees and independent contractors his-

torically focused on whether there was an employee-employer relationship, using the common-law-derived economic realities test. On this basis, decisions were made regarding whether an individual was an employee covered under the act, or an independent contractor not covered under the act. *Tata v Muskovitz*, 354 Mich 695; 94 NW2d 71 (1959); see also *McKissic v Bodine, supra.*

This common-law-based approach was appropriate until the Legislature, as it of course has the authority to do, chose to speak about who was an independent contractor by amending § 161, in 1985, through the addition of subsection d, to define more completely the term "employee." Welch, *supra* at § 3.4, p 3-4. The new language, in superseding the old economic realities test,[8] incorporated some, but not all the factors of the old test.[9] Accordingly, while the common-law economic realities test cannot be used to supersede the statute, i.e., by adding factors not in the legislative formulation of the economic realities test, those factors in the legislative test can be construed by reference to the case law development of those same factors.

---

[8] The conclusion that the subsection supersedes the common law is based on the doctrine of *expressio unius est exclusio alterius* ("express mention in a statute of one thing implies the exclusion of other similar things." *Stowers v Wolodzko*, 386 Mich 119, 133; 191 NW2d 355 [1971]). In this case, the express mention of some of the factors of the economic realities test in subsection 161(1)(d) implies the exclusion of the factors not mentioned.

[9] For example, both the economic realities test and the statute include the requirement that the worker "hold himself or herself out to . . . the public." MCL 418.161(1)(d); MSA 17.237(161)(1)(d); *McKissic, supra* at 208. On the other hand, while the first factor of the economic realities test is "[W]hat liability, if any, does the employer incur in the event of the termination of the relationship at will?" *McKissic, supra* at 208, no similar factor appears in subsection 161(1)(d).

Subsections 161(1)(b) and 161(1)(d) apply to private employers and must be read together as separate and necessary qualifications in establishing employee status. This is clear from the fact that both provisions begin by stating that they encompass "[e]very person in the service of another" (subsection 161[1][b]) and "[e]very person performing service in the course of the trade, business, profession, or occupation of an employer at the time of the injury" (subsection 161[1][d]). By the use of the phrase "[e]very person" rendering service, it is plain that every individual claiming employee status under subsection b must also be examined under subsection d. Said another way, once an association with a private employer is found under subsection 161(1)(b), the characteristics of that association must meet the criteria found in subsection 161(1)(d).

The first test then is whether plaintiff was an employee under subsection 161(1)(b). If he is, then he must also pass muster under subsection 161(1)(d).

B

Subsection 161(1)(b) involves an inquiry regarding whether plaintiff was an employee under a "contract of hire." There is minimal Michigan authority on what is a contract of hire, as distinguished from a relationship that is contractual but not "of hire." In the lead plurality opinion in *Higgins v Monroe Evening News*, 404 Mich 1, 21; 272 NW2d 537 (1978),[10] Justice MOODY

---

[10] *Higgins* was a plurality decision in which this Court affirmed the holding of the Court of Appeals that a child who was assisting a substitute newspaper carrier when struck by a car was not an employee of the newspaper. Writing separately to affirm, Justice RYAN concurred with the three signers of the lead opinion that there was insufficient evidence to

discussed an implied contract of hire, and the magistrate in this case utilized the reasoning of Justice MOODY in concluding that a contract of hire merely requires, first, an intent by two parties to suffer a detriment to receive a benefit, and, second, an agreement to exchange those detriments and benefits. Although the magistrate adequately discussed the term "contract," this was an incomplete analysis for purposes of the WDCA, because it in fact ignored the import of the words "of hire." The WCAC and the Court of Appeals likewise failed to consider the import of this phrase. This was then an error of law because the language of the statute simply was not followed. This is a consequential omission because "every word of a statute should be given meaning, and no word should be treated as surplusage or rendered nugatory if at all possible." *State Bd of Ed v Houghton Lake Community Schools*, 430 Mich 658, 671; 425 NW2d 80 (1988). Further, it is important, for practical reasons that most would acknowledge, to give full play to the limiting words "of hire" because not to do so would make virtually everyone, no matter how minimal the exchange of benefits and detriments, eligible to receive worker's compensation. There is no reason to assume that such a revolutionary reading of the statute was intended by the Legislature, and in fact this is undoubtedly why the Legislature limited eligibility by using the words "of hire."

Consequently, it is essential to turn our attention to the phrase "of hire" and its meaning under the WDCA. Fundamental principles of worker's compensation

---

sustain the legal conclusion that the boy was in the service of the newspaper under either an express or an implied contract of hire.

indicate that the words connote payment of some kind. See 3 Larson, Workmen's Compensation Law, § 47.41, pp 8-346 to 8-353. "The entire philosophy [of worker's compensation] assumes that the worker is in a *gainful occupation* at the time of injury," *Betts v Ann Arbor Public Schools*, 403 Mich 507, 518; 271 NW2d 498 (1978) (RYAN, J., dissenting, citing 1B Larson, Workmen's Compensation Law, § 47.10) (emphasis added). The Legislature accordingly designed worker's compensation to be a safety net to provide "*income maintenance* for persons who have met misfortune or whose *regular income source* has been cut off." *Franks v White Pine Copper Div*, 422 Mich 636, 654; 375 NW2d 715 (1985) (emphasis added).

These basic precepts of worker's compensation show that in order to receive benefits under the WDCA, it is not enough for an individual to be employed pursuant to a "contract"; rather, the individual must be employed pursuant to a contract "of hire," where the benefit received by the individual is payment intended as wages. In other words, worker's compensation provides benefits to those who have lost a source of income; it does not provide benefits to those who can no longer take advantage of a gratuity or privilege that serves merely as an accommodation.

The distinction between a gratuity or accommodation and a payment that satisfies the "of hire" requirement of the WDCA becomes apparent when one considers the manner in which the worker's compensation system operates. As already explained, the WDCA requires employers to compensate employees for injuries that occurred while on the job; in return for this almost automatic liability, employees are limited in the amount of compensation they may collect and,

except in limited circumstances, may not bring a tort action against the employer. See MCL 418.131; MSA 17.237(131); Welch, *supra* at § 1.2, pp 1-2 to 1-3.

The repercussions of classifying an individual as an employee for purposes of the WDCA make clear the type of the compensation needed to satisfy the "of hire" requirement. Once an individual is classified as an employee under the WDCA, the individual receives only limited benefits and forfeits the right to exercise valuable tort rights. Accordingly, to satisfy the "of hire" requirement, compensation must be payment intended as wages, i.e., real, palpable and substantial consideration as would be expected to induce a reasonable person to give up the valuable right of a possible claim against the employer in a tort action and as would be expected to be understood as such by the employer.[11]

---

[11] The dissent states that the test we enunciate today is too ambiguous to be useful. However, in so stating, the dissent ignores the overarching principle that the "of hire" element requires that the payment of compensation have been intended as wages.

Moreover, in discussing what should be the appropriate analysis, the dissent indicates that persons who "donate services" in exchange for an "incidental" type of "tangible benefit" need not be considered employees, while persons who "agree to provide services in exchange for meaningful compensation" can be considered employees. *Post* at 584-585. Unfortunately, however, the dissent articulates no practical standard by which to distinguish when a person donates services (no eligibility for worker's compensation) as opposed to when a person agrees to provide services (eligible for worker's compensation). Likewise, the dissent articulates no practical standard by which to distinguish what constitutes mere incidental tangible benefits (no eligibility for worker's compensation) as opposed to meaningful compensation (eligible for worker's compensation). Given this situation, it seems ironic that the dissent would suggest that the easily comprehended standard we have developed, with its focus on wages, is unworkable.

Finally, the dissent implies that future courts will be unable to decide whether the privileges a worker receives are substantial enough to induce a reasonable person to forfeit his common-law tort rights against his employer. As an example of the potential problems the dissent foresees

Keeping in mind these principles, we do not believe that the contract in this case was one "of hire." The privileges plaintiff received for patrolling were not a payment intended as wages because they were not substantial enough to induce a reasonable person to forfeit his common-law rights against Shanty Creek.

The privileges of free skiing, complimentary hot beverages, and meal discounts given to plaintiff on the days he patrolled were an "accommodation" to plaintiff in his patrol services. To give plaintiff free transport to the top of the slopes so as to allow him to begin his patrolling is not to benefit him, but rather is to do the minimum that must be done if Shanty Creek's patrons are to receive the benefit of his safety services. In addition, offering free hot beverages and meal discounts to plaintiff after he had been outside patrolling merely shows that the resort accommodated the needs of cold patrollers, whom the resort wanted warmed and back on the hills as soon as possible. As to the family skiing privileges and discount at the resort's stores plaintiff received, these were a "gratuity"—of nominal cost to the resort and nominal value to plaintiff, and in no sense represented a "regular income source," see *Franks, supra* at 654, to plaintiff that would be replaced by worker's compensation benefits. We note that not only were plaintiff's

---

the courts will have to face, the dissent wonders whether working for the legal minimum wage is substantial enough consideration to induce a reasonable person to give up the right to a possible tort claim. We respond by simply noting that in most cases there is no question that the "of hire" element of subsection 161(1)(b) is satisfied because there is no question that the payments are intended as a wage. The dissent apparently forgets the factual situation that has made relevant the "of hire" element in this case and thus precipitated our decision, i.e., a person seeking benefits who did not receive a regular income source from the purported employer, but rather simply received a gratuity that merely served as an accommodation.

proofs in this case deficient, so that the magistrate was unable to determine a value for the discount, but that plaintiff never claimed any of the benefits as wages for the purposes of federal income taxes. These facts demonstrate that the benefits did not represent payments intended as wages, i.e., the type of real, palpable, and substantial consideration that a reasonable person would accept in exchange for forgoing the right to bring a tort action against an employer and that would be understood as such by the employer.

Quite simply, plaintiff was a "gratuitous worker," who was not an "employee," but rather an individual assisting another with a view toward furthering his own interests. See 3 Larson, *supra* at § 47.41(c), pp 8-364 to 8-367.

We are reinforced in our analysis by the fact that § 161 indicates that the Legislature contemplated classes of individuals in a position similar to plaintiff's, and made decisions regarding whether to include them within the definition of "employee" for purposes of the WDCA. Subsection 161(1)(a), while covering public employees, specifically states that the following volunteers will be considered "employees": volunteer firefighters, volunteer safety patrol officers, volunteer civil defense workers, and volunteer ambulance drivers. MCL 418.161(1)(a); MSA 17.237(161)(1)(a). This is the only reference to volunteers in the version of the WDCA in effect at the time of plaintiff's injury and § 161(1)'s inclusion of several classes of volunteers as employees implies the exclusion of others similarly situated such as plaintiff.[12]

---

[12] For a discussion of the *expressio unius est exclusio alterius* principle upon which this analysis is based, see footnote 8.

For all these reasons, we find that the "of hire" element required under the WDCA did not exist here. Accordingly, no "contract of hire" existed between plaintiff and Shanty Creek, and plaintiff is therefore not an employee of Shanty Creek under subsection 161(1)(b) of the WDCA. That being the case, there is no reason for us to examine subsection 161(1)(d).

CONCLUSION

The Legislature, in § 161(1) of the WDCA, has clearly defined which individuals are "employees" subject to the act. We hold that plaintiff, a member of the NSPS, is not an employee of Shanty Creek under the WDCA and thus is not entitled to benefits thereunder. Accordingly, we reverse the judgment of the Court of Appeals and affirm the WCAC's denial of benefits.

WEAVER, C.J., and BRICKLEY, CORRIGAN, and YOUNG, JJ., concurred with TAYLOR, J.

KELLY, J. (*dissenting*). I disagree with the majority that plaintiff was not an employee of defendant Shanty Creek at the time of injury as defined under the Worker's Disability Compensation Act.[1] The magistrate did not err in determining that a contract of hire existed under subsection 161(1)(b) of the act, given the circumstances of this case. Therefore, I would affirm the judgment of the Court of Appeals and remand this matter for reinstatement of the worker's compensation benefits that the magistrate awarded.

The factual findings of a magistrate must be affirmed if they are supported by competent, material,

---

[1] MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*

and substantial evidence on the whole record. Const 1963, art 6, § 28,   and MCL 418.861a(3); MSA 17.237(861a)(3). "Substantial evidence" in this context "means such evidence, considering the whole record, as a reasonable mind will accept as adequate to justify the conclusion." MCL 418.861a(3); MSA 17.237(861a)(3). In the instant case, the magistrate made specific findings of fact and correctly applied general principles of contract law. He concluded that the relationship between the plaintiff and Shanty Creek Management was an employment relationship, within the meaning of the Worker's Disability Compensation Act.

Defendant argues that, since there was "no actual explicit contract" between plaintiff and Shanty Creek Management, a contract for hire did not exist. However, subsection 161(1)(b) does not require an "actual explicit contract." To the contrary, the Legislature specifically has provided that persons will be recognized as employees in the private sector if they act in the service of another "under *any* contract of hire, express or *implied*." (Emphasis added.)[2]

---

[2] In explaining why most worker's compensation acts require a contract of hire, Professor Larson observed:

> Compensation law, however, is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship.

> *          *          *

> Merely as a practical matter, it would be impossible to calculate compensation benefits for a purely gratuitous worker, since benefits are ordinarily calculated on the basis of earnings. [3 Larson, Workmen's Compensation Law, § 47.10, pp 8-304 to 8-310.]

The magistrate concluded that a contract did exist in this case. The dispositive question is did he err? Whether a contract of hire may be inferred from the conduct, language, or other pertinent circumstances of a relationship is a question of fact, if facts are in dispute. See *Chaffee v Stenger*, 361 Mich 57; 104 NW2d 805 (1960), *Holcomb v Bullock*, 353 Mich 514; 91 NW2d 869 (1958), and *Erickson v Goodell Oil Co, Inc*, 384 Mich 207; 180 NW2d 798 (1970).[3] See also 5 Corbin, Contracts (rev ed), § 24.30, p 326. In the instant case, facts and legitimate inferences were in dispute, and the magistrate resolved them, concluding that a contract of hire existed. As the magistrate's determination that a contract of hire arose was based upon competent, material, and substantial evidence on the whole record, I would hold that he did not err.

The magistrate emphasized the advantages to the ski resort of having the NSPS weekend patrol, and the corollary commitment that the patrollers were required to make. He noted that, while on duty, patrol members wearing distinctive NSPS jackets enforced safety regulations and aided accident victims. He observed that the weekend patrollers were assigned to specific areas and were not free to ski where and

---

[3] Historically, both this Court and the Court of Appeals have had difficulty deciding whether the existence of an employment relationship is a factual question, a legal question, or a mix of the two. Compare *Erickson*, *supra* at 212, and *Chaffee*, *supra* at 60, with *Higgins v Monroe Evening News*, 404 Mich 1, 19; 272 NW2d 537 (1978). See also *Nezdropa v Wayne Co*, 152 Mich App 451, 466; 394 NW2d 440 (1986). At times the answer involves the intent of the parties and necessarily turns on what weight to give differing testimony and other evidence, as in this case. Under those circumstances, we should not substitute our judgment for that of the magistrate in deciding whether the parties had a mutual arrangement to "give up and gain certain things." 3 Larson, Workmen's Compensation Law, § 47.10, pp 8-304 to 8-310.

when they wished. They were required to be in place when each ski day began and ended, depending on their assignments. Weekend patrollers also had to furnish their own fully stocked first-aid kits, although Shanty Creek Management replaced the items in the kits as they were used.

The magistrate assessed the gain to Shanty Creek Management. Of particular significance was his finding that the corporation would have had to hire professional patrollers on the weekends at Schuss Mountain, were it not for the NSPS patrol. He emphasized that the weekday patrol and the weekend patrol performed the same function and tasks.

The magistrate also highlighted the benefits that the plaintiff and other ski patrollers received in exchange for their weekend services.[4] Patrol members enjoyed skiing privileges for themselves and their families, could take advantage of reduced prices for meals and some equipment, and were given coupons for free beverages. Although the remuneration to patrollers varied, depending on how often they used the ski passes and other benefits, it was not de minimis with regard to this plaintiff, in any event. Primarily on the basis of the cost of a daily ski pass in 1990 (approximately $28 or $29), the magistrate cal-

---

[4] As the Court of Appeals correctly noted in the instant case, compensation need not be in the form of money to qualify an employee for coverage under the WDCA. *Betts v Ann Arbor Public Schools*, 403 Mich 507, 515; 271 NW2d 498 (1978). See also 3 Larson, Workmen's Compensation Law, § 47.00, p 8-301, in which the author notes that "payment may be found in anything of value." In *Betts*, the plaintiff received no monetary benefit whatsoever. This Court still found the arrangement to have the earmarks of a commercial relationship. *Id.* at 515.

culated the plaintiff's weekly ski-patrol income at $89.[5]

As the Court of Appeals observed, both the president of Shanty Creek Management and its director of skiing testified that Schuss Mountain would not operate without some form of ski patrol. In addition, Mr. Mikko testified that there was no difference between the duties of the professional weekday patroller-employees and the weekend patrollers. He, the plaintiff, and others also confirmed the benefits provided to members of the weekend patrol and the services that they were required to render in exchange.

Therefore, I would hold that the WCAC exceeded its authority. It substituted its view of the facts and its assessment of the contract question for the findings and conclusion of the magistrate. Const 1963, art 6, § 28, and MCL 418.861a(3); MSA 17.237(861a)(3).

The majority concludes that the "of hire" element was not satisfied in this case. It finds that the benefits did not represent the real, palpable, and substantial consideration a reasonable person would accept in exchange for forgoing the right to bring a tort action. I disagree. How will future courts be able to decide whether the privileges a worker received were "substantial" enough to induce a reasonable person to for-

---

[5] The plaintiff had argued that his weekly income from ski patrolling was $206.50. This included skiing passes for himself and his two daughters, as well as beverages and meal discounts. The magistrate rejected this calculation on the basis that the record did not indicate that the two daughters skied every weekend. The magistrate did observe that he had no data on which to attach a wage related to discounts on equipment purchased at the pro shop. However, contrary to the majority's assertion, this does not substantiate a conclusion that these discounts were a mere "gratuity" of nominal cost to the resort. As anyone who has purchased ski equipment would agree, such a "gratuity" can amount to a substantial sum of money, depending on the quality of the equipment.

feit his common-law rights against his "employer"? How many reasonable persons would be enticed to sign away their rights to obtain a potentially large damage award for the remuneration of the legal minimum wage? The majority's test, although poetically phrased, is too ambiguous to be useful.

The majority also concludes that the Legislature contemplated classes of individuals in positions similar to plaintiff's and consciously decided against including them within the definition of "employee" under the WDCA. I disagree. The version of subsection 161(1)(a) in effect at the time of plaintiff's injury did specifically limit the types of volunteers who are to be considered "employees." However, it explicitly applied only to public employees and should not be read to limit the effect of subsection 161(1)(b).

The defendants and amicus curiae caution that the award of worker's compensation benefits in this case would have a chilling effect on the use of volunteers in Michigan and perhaps elsewhere.[6] I disagree and believe that their forecast misconstrues the foundation for such an award.

Many persons in our society donate services with no expectation of payment other than incidental reimbursement or reward. I would not hold that they are employees under the WDCA merely because they receive some sort of tangible benefit, be it food, beverage, or even skiing privileges. Rather, I would simply reaffirm the principle that persons who agree to provide services in exchange for meaningful compen-

---

[6] Amicus curiae reports that more than 33,000 persons presently volunteer their services in hospitals throughout Michigan. The defendants estimate that volunteers annually provide nearly 15 billion hours of service in the United States, at a value of $150 billion.

sation will not be denied coverage solely on the basis of their titles. Those labeled "volunteers"[7] or who are members of a volunteer organization,[8] even where the compensation is other than monetary, should not be denied benefits automatically. Nor should an employer refuse coverage on the ground that the worker might have performed the services gratuitously had the employer not provided or promised compensation.[9]

Finally, the majority incorrectly links the inquiries in subsections 161(1)(b) and 161(1)(d). Subsection 161(1)(d) was not inserted into the statute to modify the inquiry under subsection 161(1)(b); rather, it was included in order to cover certain persons who do not fall under the definition contained in subsection 161(1)(b). In particular, subsection 161(1)(d) deals with persons more properly classified as "independent contractors" rather than "employees."

After hearing the testimony and argument of counsel, the magistrate properly held that plaintiff was an employee of the defendant, a private for-profit corpo-

---

[7] In this regard, I note that Black's Law Dictionary (6th ed), p 1576, defines a "volunteer" as one who gives services "without any express or implied promise of remuneration."

[8] Indeed, the record in the instant case reveals that the weekday ski patroller at Schuss Mountain was in exactly that situation. She was a member of the NSPS because of certain training and skills and, with regard to the same training and skills, she was also an employee of Shanty Creek Management. The fact that her remuneration was a monetary wage under an express contract does not answer the question whether plaintiff was an employee as well. It is relevant but not determinative that plaintiff worked under an implied contract and for remuneration other than wages.

[9] The defendants and amicus curiae have cited numerous decisions in which courts have rejected the "employee" claims of persons who have donated their services to a business or organization. I note that, in most instances, unlike the present case, the alleged employer was a governmental or other nonprofit entity.

ration, under a contract of hire. The magistrate did
not employ incorrect legal reasoning, and his findings
of fact were supported by competent, material, and
substantial evidence on the whole record. Accord-
ingly, I would remand this matter to the WCAC to rein-
state the benefits awarded by the magistrate, and to
address the remaining issues not decided in its initial
opinion.

CAVANAGH, J., concurred with KELLY, J.