# STATE OF MICHIGAN

# COURT OF APPEALS

---

ROBERT G. FLORIAN,

        Plaintiff-Appellant,

v

GARY GRIMM, doing business as G & G
LOGGING L.L.C., TRAVELERS INDEMNITY
COMPANY, and SILICOSIS, DUST DISEASE, &
LOGGING INDUSTRY COMPENSATION
FUND,

        Defendants-Appellees.

UNPUBLISHED
November 8, 2016

No. 328451
MCAC
LC No. 12-000124

---

ROBERT G. FLORIAN,

        Plaintiff-Appellee,

v

GARY GRIMM, doing business as G & G
LOGGING L.L.C. and TRAVELERS
INDEMNITY COMPANY,

        Defendants-Appellants,

and

SILICOSIS, DUST DISEASE, & LOGGING
INDUSTRY COMPENSATION FUND,

        Defendant.

No. 328460
MCAC
LC No. 12-000124

---

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and GLEICHER, JJ.

PER CURIAM.

Robert Florian suffered a severe leg injury while working as a logger. A magistrate determined that he was entitled to workers' compensation benefits as he suffered a disability in

-1-

the course of his employment. Rather than considering whether the magistrate's decision was supported by competent, material, and substantial evidence on the whole record, the Michigan Compensation Appellate Commission (MCAC) employed de novo review and reversed the magistrate's award of benefits beyond March 10, 2010.

Despite the use of an incorrect standard, the MCAC correctly determined that Florian was an employee rather than an independent contractor. We affirm that ruling. The MCAC improperly concluded that Florian failed to establish a prima facie case of disability, and we reverse in that regard. We also reverse the MCAC's ruling that limited Florian's benefits to the period before March 10, 2010. However, the MCAC aptly determined that remand to the magistrate for recalculation of Florian's applicable wage was required. As such, we affirm in part, reverse in part, and remand to the magistrate for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In September 2009, Robert Florian was struck by a tree he was cutting while working as a logger for G & G Logging. The impact fractured Florian's tibia in several places and broke his fibula. Dr. Edward Southern operated and affixed a plate to the comminuted tibial fracture. After a March 10, 2010 follow-up visit, Dr. Southern reported that although "obviously [Florian] is not going to be going back to cutting trees any time in the near future," he had reached a point at which he could "return to whatever type of work he feels he is capable of."

On April 7, 2010, Florian filed an application for mediation or a hearing with the Workers' Compensation Agency. G & G Logging and its insurer, Travelers Indemnity Company, filed an answer on April 30, 2010, denying liability and demanding Florian's medical records. At Travelers' request, the Silicosis, Dust Disease, and Logging Industry Compensation Fund (hereafter "the Logging Fund") was added as a necessary party.[1]

A magistrate hearing was held on June 27, 2012, to determine whether Florian was entitled to workers' compensation benefits. Florian presented into evidence a questionnaire disclosing his work history, qualifications, and training. Florian described that he was 57 years old at the time of his injury. He had a high-school education and had participated in, but not completed, a tool-and-die apprenticeship program in 1970 to 1971. Florian engaged in foundry work, construction work, and work on a trailer production line in the early 1970s, and logging from that point forward, with some occasional side work selling firewood and acting as a guide for hunting and fishing trips.

To establish that he was disabled from logging work, Florian presented an independent medical examination (IME) performed by orthopedic surgeon Kent E. Anderson. Dr. Anderson

---

[1] Employers and insurers in the logging industry are entitled to reimbursement from the Logging Fund when they pay workers' compensation benefits in excess of amounts cited in MCL 418.531(1).

reported that Florian had "sustained a serious injury that typically results in some permanent impairment of function," and that the plate that had been surgically affixed to his tibia would have to be removed before Florian could regularly wear boots or shoes that extended above his ankle. Although Dr. Anderson observed that "[t]he fracture appeared to have healed solidly," he concluded that "even with extensive rehabilitation," Florian would not be able to work as a piece cutter or logger "now or in the future[.]" Dr. Anderson testified that Florian needed "permanent restrictions" on the type of work he could perform. Initially Florian would be unable to work on uneven terrain, squat, or stand for more than four hours of an eight-hour shift. Florian testified that he could not return to work as a logger because he was "still in pain from the injury" and could not do more than an hour of physical activity.

Defendants responded with a report by Dr. Grant Hyatt who examined Florian on August 4, 2011. Florian told Dr. Hyatt that he "still had some occasional aching, soreness and stiffness as a result of his injuries" and that his lower left leg seemed weaker than his right. However, Florian characterized his response to the surgery as "excellent" and related that his "symptoms had effectively resolved." Dr. Hyatt noted that although Florian's left lower leg "remained one centimeter smaller than the right," this difference was within the normal range for Florian's age group. Dr. Hyatt stated that Florian "did not exhibit any limp or any other abnormality of his gait," which "indicated that he had achieved a normal restoration of his capacity to stand and walk without impairment." Dr. Hyatt further opined that Florian "had recovered sufficiently to resume normal physical activities" and that he "saw no indication for any restrictions" on Florian's return to work as a logger "from an orthopedic standpoint."

With regard to his future job prospects, Florian proffered a vocational assessment performed on June 16, 2012 by David Ostwald, a certified vocational evaluation specialist. The assessment took into account Florian's age, education, work experience, and medical history, including Florian's own description of his limitations and Dr. Anderson's IME. Ostwald explained that although he had reviewed the opinions of Drs. Southern and Hyatt, he did not rely on them to reach his conclusion because they were not as specific as Dr. Anderson's in determining Florian's physical limitations.

Ostwald testified that Florian's skills as a logger were "industry specific" and did not transfer to any other type of work. Ostwald stated that Florian reported being able to "stand for approximately two hours in an eight-hour day, walk occasionally up to two hours in an eight-hour day," and lift things, although he had difficulty carrying them. Ostwald noted that Florian's previous work as a fishing guide was, like logging, "classified as heavy work." Florian's skills as a logger and as a guide would not transfer to light or sedentary work. Ostwald maintained that Florian "would need work that would provide him the opportunity to sit and/or stand" as determined by his pain level. He further opined that a sedentary job would likely pay only $8 to $10 an hour, significantly less than a logger's wage of $13 to $16 an hour.

Ostwald explained that he had not included Florian's 1970-1971 tool-and-die apprenticeship in the transferable skills assessment because such analysis only goes back 15 years. Ostwald further explained that considering the changes in the tool-and-die industry in the intervening time, particularly the shift to computerized machinery, Florian would require "a considerable amount of training in order to return to that type of work."

After considering this evidence, the magistrate determined that Florian was an employee of G & G Logging under MCL 418.161(1)(*l*). In doing so, the magistrate employed the test set forth in *Reed v Yackell*, 473 Mich 520; 703 NW2d 1 (2005) (opinion by TAYLOR, C.J.), under which Florian was required to prove both that he entered into a contract of hire and that he was not an independent contractor. Noting that Florian's weekly paychecks as reported on IRS Form 1099-MSC were substantial remuneration when considering the hours that Florian worked, the magistrate concluded that Florian was an employee rather than an independent contractor under MCL 468.161(1)(n).

With regard to Florian's disability, the magistrate concluded that the testimony of Dr. Anderson and Ostwald established that Florian was not able to perform his former job or any other job involving heavy labor. Accordingly, the magistrate concluded that Florian had established a prima facie case of disability under MCL 418.301(4) and *Stokes v Chrysler LLC*, 481 Mich 266; 750 NW2d 129 (2006). Florian therefore was entitled to continuing weekly wage loss benefits commencing September 20, 2009, the date of his injury. The magistrate ordered that the Logging Fund would be responsible for any benefits due pursuant to statute.

The Logging Fund filed a claim for review of the magistrate's decision in the Michigan Compensation Appellate Commission (MCAC). Counsel for G & G Logging and Travelers also filed a claim for review; however, the MCAC dismissed the claim as untimely filed, leaving the Logging Fund as the only remaining defendant. Thereafter, the MCAC affirmed the magistrate's conclusion that Florian was an employee rather than an independent contractor. The MCAC also affirmed the magistrate's decision to grant Florian weekly wage benefits until March 10, 2010, as he had "established total disability" until that date.

However, the MCAC reversed the continuation of weekly benefits after March 10, 2010 on the grounds that Florian had been "cleared" by Dr. Southern "for whatever work he felt capable of performing," and Florian had not complied with the job-seeking requirements of *Stokes*. The MCAC also concluded that the magistrate had erred in computing Florian's weekly wage, which the magistrate claimed to have calculated under MCL 418.371(6) but actually calculated under MCL 418.371(3). While the MCAC agreed that MCL 418.371(3) provided the proper calculation, the magistrate used figures unsupported by the evidence. Accordingly, the MCAC remanded the matter to the Board of Magistrates to recalculate Florian's weekly wage benefits from September 20, 2009 until March 10, 2010.

## II. PARTIES IN THE MCAC

We first note that the MCAC abused its discretion in rejecting G & G Logging and Travelers Indemnity's brief as untimely filed. See *Kurtz v Faygo Beverages, Inc*, 466 Mich 186, 192; 644 NW2d 710 (2002). Defendants mailed their brief before the filing deadline but its delivery was delayed by the Presidents Day postal holiday. This was the exact scenario in *Laudenslager v Pendell Printing, Inc*, 215 Mich App 167; 544 NW2d 721 (1996), in which this Court found the appellant's substantial compliance and the lack of prejudice to the appellee militated against dismissal. Accordingly, although the MCAC declined to consider G & G Logging and Travelers Indemnity's substantive challenges, we have taken them into account in reaching our decision and our resolution of these matters applies to all defendants.

-4-

Moreover, contrary to Florian's contention, review by the MCAC was not precluded where the Logging Fund was the only defendant left before the tribunal. The Logging Fund was an aggrieved party, even standing alone, as the magistrate's order required it to pay workers' compensation benefits after G & G Logging's and Travelers Indemnity's liability came to an end. The Logging Fund therefore had a due process right to seek review. See *Grice v Gen Motors Corp*, 407 Mich 465; 286 NW2d 238 (1979); *Banks v DeClerk Indus, Inc*, 111 Mich App 489; 314 NW2d 663 (1982).

## III. SUBSTANTIVE CHALLENGES

## A. STANDARDS OF REVIEW

In reviewing a decision of the MCAC, we first consider the decision of the MCAC rather than that of the magistrate. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 709; 614 NW2d 607 (2000). If any evidence supports the MCAC's factual findings, and if the MCAC did not "misapprehend its administrative appellate role" in reviewing the magistrate's decision, then the MCAC's factual findings must be treated as conclusive. *Id*. at 709-710. However, we may reverse the MCAC's decision if the MCAC operated within the wrong legal framework or based its decision on erroneous legal reasoning. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401-402; 605 NW2d 300 (2000). Under the correct legal framework, "findings of fact made by a worker's compensation magistrate shall be considered conclusive by the commission if supported by competent, material, and substantial evidence on the whole record." MCL 418.861a(3).

To the extent this case involves questions of law, our review is de novo. *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561, 569, 570 n 7; 592 NW2d 360 (1999).

## B. ESTABLISHING A DISABILITY

The MCAC operated within the wrong legal framework by reviewing the magistrate's decision de novo rather than determining whether it was supported by competent, material, and substantial evidence. The MCAC also based its analysis of Florian's duty to seek employment on erroneous legal reasoning. Because the magistrate's ruling that Florian had established a disability was supported by competent, material, and substantial evidence, the MCAC erred by overruling it.

Under MCL 418.301, an employee who suffers a personal injury arising out of the course of employment is entitled to compensation if he or she establishes that the injury caused both disability and wage loss. MCL 418.301(1), (8), (9). A "disability" for workers' compensation purposes is defined as "a limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work-related disease." MCL 418.301(4)(a). The provision defining "disability" further states:

A limitation of wage earning capacity occurs only if a personal injury covered under this act results in the employee's being unable to perform all jobs paying the maximum wages in work suitable to that employee's qualifications and

training, which includes work that may be performed using the employee's transferable work skills. A disability is total if the employee is unable to earn in any job paying maximum wages in work suitable to the employee's qualifications and training. . . . [MCL 418.301(4)(a).]

To establish an initial showing of disability, MCL 418.301(5) requires an employee to do all of the following:

(a) Disclose his or her qualifications and training, including education, skills, and experience, whether or not they are relevant to the job the employee was performing at the time of the injury.

(b) Provide evidence as to the jobs, if any, he or she is qualified and trained to perform within the same salary range as his or her maximum wage earning capacity at the time of the injury.

(c) Demonstrate that the work-related injury prevents the employee from performing jobs identified as within his or her qualifications and training that pay maximum wages.

(d) If the employee is capable of performing any of the jobs identified in subdivision (c), show that he or she cannot obtain any of those jobs. The evidence shall include a showing of a good-faith attempt to procure post-injury employment if there are jobs at the employee's maximum wage earning capacity at the time of the injury.

These statutory requirements form the basis of the four-step analysis set forth in *Stokes*, 481 Mich at 281-283. Defendants argue that although Florian satisfied step one, subsection (a), he failed to satisfy the remaining three steps.

Step two requires a plaintiff to "prove what jobs, if any, he is qualified and trained to perform within the same salary range as his maximum earning capacity at the time of the injury." *Stokes*, 481 Mich at 282. To satisfy the requirement, a plaintiff "must provide some reasonable means to assess employment opportunities" within the maximum salary range "to which his qualifications and training might translate." *Id*. The evidence on this point "may simply consist of a statement of his educational attainments, and skills acquired throughout his life, work experience, and training; the job listings for which the claimant could realistically apply given his qualifications and training; and the results of any efforts to secure employment." *Id*. "A claimant sustains his burden of proof by showing that there are no reasonable employment options available for avoiding a decline in wages." *Id*.

Florian provided the means to evaluate his employment opportunities: Ostwald's vocational assessment. Through that assessment, Ostwald determined that Florian could no longer work as a logger, that his logging skills were not transferable to other occupations, and that his only other vocational experience and training was too outdated to be considered in a transferable-skills analysis. Ostwald stated that Florian required work that would allow him to sit down to manage his pain level and that such jobs typically paid between $8 and $10 an hour, significantly less than a logger's wage. Ostwald noted that light or sedentary jobs in assembly or

-6-

manufacturing were uncommon in Florian's geographical area. This evidence showed that Florian had "no reasonable employment options available for avoiding a decline in wages," thus meeting the standard set forth in *Stokes*' second step.

The MCAC nevertheless reversed the magistrate's finding, stating that the magistrate's conclusion that logging was the only skill for which Florian was qualified was "challenged by [Florian's] testimony regarding several jobs he once performed which were classified as unskilled general labor jobs." The MCAC stated that the magistrate should have considered such jobs as "running a die trim machine, trimming castings, fixing castings, running a drill press, running a smelter, general labor for a roofer, and installing air conditioning in trailers."

As noted, under MCL 418.861a(3), "findings of fact made by a worker's compensation magistrate shall be considered conclusive by the [MCAC] if supported by competent, material, and substantial evidence on the whole record." Substantial evidence is that which, considering the whole record, "a reasonable mind will accept as adequate to justify the conclusion." *Id.*; see also *Mudel*, 462 Mich at 709-710. In holding that the magistrate erred by failing to consider its proffered list of jobs—many of which are the type of heavy, nonsedentary, or skilled labor that Florian's expert specifically stated he was no longer able or trained to perform—the MCAC misapprehended its appellate role. The MCAC reviewed the magistrate's findings de novo and substituted its own findings rather than determining whether the magistrate's finding was supported by substantial evidence. *Mudel*, 462 Mich at 703-704. Because the magistrate's findings were based on the competent, material, and substantial evidence Florian provided, the MCAC erred by failing to affirm the magistrate's ruling.

The MCAC similarly erred by reversing the magistrate's determination that Florian had satisfied the remaining steps of *Stokes*. Under step three, Florian was required to "show that his work-related injury prevents him from performing some or all of the jobs identified as within his qualifications and training that pay his maximum wages." *Stokes*, 481 Mich at 283. Under step four, Florian would have been required to show that he had made a "good-faith attempt to procure post-injury employment" if there had been "jobs at the same salary or higher that he [was] qualified and trained to perform" and if "his work-related injury [did] not preclude performance." *Id.*

Ostwald did not identify any jobs that would pay Florian's highest wage that he would be qualified for, trained to perform, and able to do after his injury. Ostawald specifically indicated that the type of work Florian was capable of performing paid substantially less than he made as a logger. The MCAC reversed, asserting that Florian "did not provide evidence to suggest that he searched and could not find 'unskilled' jobs" such as "convenience store cashier, telemarketing, fast food order taking, and surveillance security work," or evidence "that his injury prevented him from performing those types of jobs." However, steps three and four of *Stokes* apply only if there are identifiable jobs that a plaintiff is able to perform that are "within his qualifications and training that pay his maximum wages." *Id.* Accordingly, Florian had no duty to seek lower-paying unskilled or light work. Because the MCAC's analysis in this regard was based on erroneous legal reasoning, we reverse its ruling that Florian did not establish a disability and reinstate the magistrate's open award of benefits.

C. EMPLOYEE OR INDEPENDENT CONTRACTOR

-7-

The MCAC agreed with the magistrate that Florian was an employee of G & G Logging. As the MCAC employed a more stringent level of review than permitted by statute and yet still reached the correct result, we need not remedy the analytic error.

Under MCL 418.161(1)(*l*), an "employee" for workers' compensation purposes includes "[e]very person in the service of another, under any contract of hire, express or implied[.]" Once a person has established that he or she satisfies this definition, that person must prove that he or she meets the definition of employee set forth in MCL 418.161(1)(n). See *Hoste*, 459 Mich at 570. MCL 418.161(1)(n) defines "employee" in applicable part as:

> Every person performing service in the course of the trade, business, profession, or occupation of an employer at the time of the injury, if the person in relation to this service does not maintain a separate business, does not hold himself or herself out to and render service to the public, and is not an employer subject to this act.[2]

If the person fails to satisfy any one of these criteria, that person is "excluded from employee status." *Auto-Owners Ins Co v All Star Lawn Specialists Plus, Inc*, 497 Mich 13, 19; 857 NW2d 520 (2014).

The MCAC's and magistrate's determination that Florian was an employee was "supported by competent, material, and substantial evidence on the record as a whole." Florian did not maintain a separate business, conduct business under a separate name, or take on employees. Because these findings were supported by the requisite evidence, the MCAC was required to treat them as conclusive. *Mudel*, 462 Mich at 709-710. The fact that Florian purchased a worker's compensation policy at his employer's request does not render him an independent contractor, nor does describing himself as a sole proprietor on an insurance application equate to the maintenance of a separate business or an offer to perform services for the public. Accordingly, defendants have shown no error in this regard.

## D. AVERAGE WEEKLY WAGE

The MCAC also correctly concluded that the evidence on which the magistrate relied to calculate Florian's average weekly wage was inadequate.

Determination of an injured plaintiff's average weekly wage for workers' compensation purposes is governed by MCL 418.371. Two subsections of this provision were addressed by the parties and the tribunals in this case. MCL 418.371(3) applies if an employee worked less than 39 weeks in the employment in which he or she was injured. The average weekly wage is calculated by dividing the employee's total wages by the number of weeks actually worked. MCL 418.371(6) applies "[i]f there are special circumstances under which the average weekly

---

[2] MCL 418.161(1)(n) has since been amended to add that services are considered employment if they are performed by a person determined to be in an employer-employee relationship under a test used by the Internal Revenue Service; however, that amendment applies only to injuries incurred on or after December 19, 2011. See 2011 PA 266.

wage cannot justly be determined by applying subsections (2) to (5)[.]" The average weekly wage in such cases is computed by dividing the employee's earnings in the year before the injury by the number of days the employee worked, then multiplying that daily wage by the number of days customarily worked, but not less than five. MCL 418.371(6).

In this case, the magistrate began by adding a list of figures of varying amounts that Florian had been paid by G & G Logging at irregular intervals between September 20, 2008 and September 24, 2009. The magistrate concluded this constituted 34 weeks of employment. The magistrate found that the sum of these figures was $15,418.22. The magistrate stated that because Florian was not paid on a regular weekly basis, his average weekly wage must be calculated under MCL 418.371(6). The magistrate divided $15,418.22 by 34 weeks to arrive at an average weekly wage of $453.48.

On review, the MCAC noted that although the magistrate indicated that he was using MCL 418.371(6) to calculate Florian's average weekly wage, his explanation revealed that he actually used the formula set forth in MCL 418.371(3). The MCAC further noted a mathematical error; adding the list of figures paid by G & G to Florian results in a total of $15,526.72. Finally, the MCAC concluded that the evidence was insufficient to determine whether the number of weeks Florian had worked was 34 or, as G & G argued, 35.3.

The MCAC was correct on all three points. The MCAC correctly calculated Florian's total earnings from the list of figures. Further, there is no basis in the record from which to compute the number of weeks Florian worked. Although the parties appear to agree that Florian worked from September 20, 2008 through December 8, 2008 and again from April 10, 2009 through September 20 of 2009, this results in a figure of 34 weeks and 4 days, which matches neither the magistrate's figure of 34 weeks nor G & G's figure of 35.3 weeks. Under *Rowell v Security Steel Processing Co*, 445 Mich 347, 356; 518 NW2d 409 (1994), the magistrate would have been required to include partially worked weeks in its calculation using the method set forth in MCL 418.371(3). Under these circumstances, the MCAC correctly concluded that the case must be remanded to the magistrate to recalculate Florian's average weekly wage.

## III. CONCLUSION

We affirm the portion of the MCAC's opinion concluding that Florian was an employee rather than an independent contractor, reverse the portion of the MCAC's opinion concluding that Florian failed to establish a prima facie case of disability under *Stokes*, and remand for reinstatement of the magistrate's open award of worker's compensation benefits. On remand, the magistrate must determine the correct amount of benefits due by recalculating Florian's average weekly wage in a manner that addresses the discrepancies regarding the number of weeks plaintiff worked, Florian's yearly earnings total, and the statutory basis for the computation. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher