SANCHEZ v EAGLE ALLOY, INC
VAZQUEZ v EAGLE ALLOY, INC

Docket Nos. 238003, 239592. Submitted September 5, 2002, at Lansing. Decided January 7, 2003, at 9:00 A.M. Leave to appeal sought.

David Sanchez and Alejandro Vazquez, undocumented aliens in the United States, obtained employment in Michigan with Eagle Alloy, Inc., after presenting fake social security cards and other false documents. They sustained disabling work-related injuries and sought worker's compensation. A worker's compensation magistrate found Sanchez and Vazquez to be "employees," as defined by subsection 161(1)(*l*) of the Worker's Disability Compensation Act (WDCA), MCL 418.161(1)(*l*), and entitled to worker's compensation benefits until the time Eagle Alloy learned that they were illegal aliens who were not permitted to work in the United States. The magistrate determined that once Eagle Alloy learned of their immigration status, Eagle Alloy's liability for worker's compensation benefits was suspended under subsection 361(1) of the WDCA, MCL 418.361(1), which provides that an employer shall not be liable for compensation for such periods that the employee is unable to obtain or perform work because of commission of a crime. The magistrate also ordered Eagle Alloy to pay medical bills related to the injuries sustained by Sanchez and Vazquez. The Worker's Compensation Appellate Commission (WCAC) affirmed the magistrate's decision that Sanchez was an employee entitled to worker's compensation benefits, but reversed the magistrate's decision that benefits were suspended when Eagle Alloy learned of Sanchez' immigration status. On remand, the magistrate granted Sanchez an open award of benefits, which the WCAC affirmed. With respect to Vazquez, the WCAC addressed only the proper construction of subsection 361(1) and affirmed the magistrate's decision with modification, determining that Vazquez' commission of a crime precluded any award of benefits. Eagle Alloy appealed by leave granted from the WCAC decision in the Sanchez case, and Vazquez appealed by leave granted from the WCAC decision in his case. The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. Subsection 161(1)(*l*) defines "employee," in part, as "[e]very person in the service of another, under any contract of hire, express or implied, including aliens . . . ." By expressly including the word "aliens" in the definition of "employee," by failing to modify the word "aliens" with the adjective "illegal" or "legal," and by failing to otherwise exclude illegal aliens from the coverage of the WDCA, the Legislature intended to include undocumented aliens such as Sanchez and Vazquez as aliens within the definition of "employee" in subsection 161(1)(*l*).

2. A contract of hire exists for purposes of subsection 161(1)(*l*) where, as here, the parties intended to suffer a detriment to receive a benefit and the parties agreed to exchange those detriments and benefits. Mutuality of agreement, or a meeting of the minds, was implied by the parties' conduct. Because the WDCA is silent on the effect of a false representation, an award of benefits to Sanchez and Vazquez is not precluded by their misrepresentations about their immigration status.

3. Subsection 361(1) does not require conviction of a crime but precludes benefits when the worker is imprisoned or has committed a crime and is unable to obtain or perform work because of the commission of a crime. "Crime" as used in subsection 361(1) refers to federal and state crimes. The Immigration Reform and Control Act, 8 USC 1324a, makes it a crime for an unauthorized alien to subvert the employment verification system, which was designed to deny employment to aliens who are not lawfully present in the United States or are not lawfully authorized to work in the United States, by tendering fraudulent documents. The worker's compensation magistrate correctly determined that Sanchez' and Vazquez' admitted use of false documents to obtain employment constituted the commission of crimes. The magistrate further correctly concluded that Sanchez and Vazquez became unable to obtain or perform work because of the commission of crime once Eagle Alloy learned of their immigration status.

4. In the case of Sanchez, the holding of the WCAC that Sanchez is an employee for purposes of the WDCA is affirmed, the WCAC decision to grant weekly wage-loss benefits to Sanchez beyond the date on which his true immigration status was discovered by Eagle Alloy is reversed, and the WCAC decision to grant benefits before that date is affirmed.

5. In the case of Vazquez, the WCAC decision to deny weekly wage-loss benefits up to the date on which his true immigration status was discovered by Eagle Alloy is reversed and the WCAC decision to deny benefits after that date is affirmed.

Affirmed in part and reversed in part.

1. WORKER'S COMPENSATION — WORKER'S DISABILITY COMPENSATION ACT — WORDS AND PHRASES — EMPLOYEE — UNDOCUMENTED ALIENS.

An undocumented alien in Michigan who is in the service of another under any contract of hire is an employee within the coverage of the Worker's Disability Compensation Act (MCL 418.161[1][l]).

2. WORKER'S COMPENSATION — WAGE-LOSS BENEFITS — COMMISSION OF A CRIME — UNDOCUMENTED ALIENS.

An undocumented alien who uses false documents to obtain employment in Michigan and then suffers a work-related injury is entitled to worker's compensation wage-loss benefits until such time as the employer discovers the alien's illegal status; upon the employer's discovery, the alien becomes unable to obtain or perform work because of the commission of a crime and the alien's wage-loss benefits must be suspended, as required by the Worker's Disability Compensation Act for a benefit recipient who is unable to work because of the commission of a crime (8 USC 1324c[a]; MCL 418.361[1]).

*McCroskey, Feldman, Cochrane & Brock, P.C.* (by *Gary T. Neal*), for David Sanchez.

*Libner, VanLeuven, Evans, Portenga & Slater, P.C.* (by *John A. Braden*), for David Sanchez and Alejandro Vazquez.

*Bleakley, Cypher, Parent, Warren & Quinn, P.C.* (by *Thomas H. Cypher* and *James J. Helminski*), for Eagle Alloy, Inc.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Victoria A. Keating*, Assistant Attorney General, for Second Injury Fund.

Amici Curiae:

*Elaine Sterrett Isely* for Michigan Migrant Legal Assistance Project, Inc.

*Gary N. Gershon* and *Richard Kessler* for Farm Labor Organizing Committee, AFL-CIO.

Before: Markey, P.J., and Cavanagh and R. P. Griffin*, JJ.

Markey, P.J. In Docket No. 238003, defendant Eagle Alloy, Inc., appeals by leave granted from an order of the Worker's Compensation Appellate Commission (WCAC) affirming with modification the magistrate's order on remand awarding weekly wage-loss benefits to plaintiff David Sanchez, an undocumented alien in the United States.[1] We affirm in part and reverse in part.

In Docket No. 239592, plaintiff Alejandro Vazquez, also an undocumented alien in the United States, appeals by leave granted from an order of the WCAC, sitting en banc, denying Vazquez weekly wage-loss benefits on the basis of its construction of subsection 361(1) of the Worker's Disability Compensation Act (WDCA), MCL 418.361(1). We affirm in part and reverse in part.

## I. INTRODUCTION

In deciding these consolidated appeals, we answer two questions of first impression:

First, are plaintiffs "employees" under the definition provided by WDCA subsection 161(1)(*l*), MCL

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

[1] For an alien to be "authorized" to work in the United States, the alien must possess "a valid social security account number card," 8 USC 1324a(b)(1)(C)(i), or "other documentation evidencing authorization of employment in the United States that the Attorney General finds, by regulation, to be acceptable for purposes of this section," 8 USC 1324a(b)(1)(C)(ii). See also 8 USC 1324a(h)(3)(B) (defining "unauthorized" alien as any alien "[not] authorized to be so employed by this Act or by the Attorney General").

418.161(1)(*l*) ("[e]very person in the service of another, under any contract of hire, express or implied, including aliens")? Yes. We hold that including undocumented aliens such as plaintiffs as "aliens" within the WDCA definition of "employee" accords with the language and apparent legislative intent of subsection 161(1)(*l*). Plaintiffs are "employees" who are not only eligible but also required to invoke the exclusive remedy provided by the WDCA in lieu of any tort-based remedy.

Second, does WDCA subsection 361(1), which provides for suspension of weekly wage-loss benefits when the employee is unable to obtain or perform work because of commission of a crime, operate to temporarily suspend any award of weekly wage-loss benefits to plaintiffs? Yes. We hold that defendant has borne its burden of demonstrating that plaintiffs "committed" a crime under subsection 361(1) to the extent that any award of weekly wage-loss benefits to which plaintiffs are entitled should be suspended.

## II. FACTS

### A. DOCKET NO. 238003

Plaintiff Sanchez, a Mexican national, purchased a fake social security card in California and thereafter obtained a California driver's license. Upon his arrival in Michigan, Sanchez presented defendant with the false documentation and signed an employment application that contained the averment that he was legally present in the United States. In March 1997, he began full-time employment for defendant doing grinding work, among other tasks. He simultaneously

worked full-time doing grinding work for another employer.

In September 1998, Sanchez suffered a right hand injury when one of defendant's machines closed on his hand, crushing and burning it between two heated metal plates. After many surgeries and physical therapy, he was released to restricted work in April 1999 and unrestricted work in September or October 1999. Sanchez did not attempt to also return to working for the other employer.

In August 1999, defendant terminated Sanchez' employment because Sanchez was unable to refute a notice defendant received from the Social Security Administration in June 1999 that Sanchez's social security number was invalid. Defendant informed Sanchez that it would rehire him if he became a documented alien in the United States.

In December 1999, still with his status as an undocumented foreign citizen, Sanchez obtained employment through a temporary employment agency, working forty hours a week.

Sanchez applied for worker's compensation benefits, and defendant filed a petition seeking recoupment of benefits and reimbursement from the Second Injury Fund. The magistrate[2] found that Sanchez was an "employee" under the WDCA and awarded him a closed award of weekly wage-loss benefits through the date on which his employment status was discovered. The magistrate reasoned that Sanchez' wage-loss benefits were forfeited on the date his employment status was discovered under subsection 361(1),

---

[2] Both of these cases were initially heard and decided by Magistrate Donna J. Grit.

which provides in pertinent part that "an employer shall not be liable for compensation . . . for such periods of time that the employee is unable to obtain or perform work because of . . . commission of a crime." MCL 418.361(1). The magistrate also ordered defendant to pay for all reasonable and necessary medical treatment of Sanchez' right hand pursuant to MCL 418.315.

On appeal, a majority of the WCAC agreed with the magistrate that the definition of "employee" in WDCA subsection 161(1) included Sanchez, but reversed the magistrate's decision to forfeit benefits pursuant to WDCA subsection 361(1). The WCAC remanded to the magistrate for further fact finding on the question of compensable disability. On remand, the magistrate granted Sanchez an open award of benefits, which a majority of the WCAC affirmed.

Defendant timely filed an application for leave to appeal to this Court, which this Court granted.

### B. DOCKET NO. 239592

Plaintiff Vazquez, also a Mexican national, used a fake social security card and fake resident alien card to obtain work with defendant as a grinder. In January 1999, Vazquez lifted a heavy metal part at work and experienced sudden pain in his left shoulder. He was diagnosed with a left acromioclavicular joint separation. Defendant gave Vazquez favored work but subsequently terminated his employment in April 1999 for failure to adhere to defendant's attendance policy.

Defendant received a notice from the Social Security Administration in June 1999 that Vazquez' social

security number may be invalid, a fact that was subsequently confirmed by counsel for Vazquez in October 1999.

Vazquez applied for worker's compensation benefits from defendant, and the magistrate awarded Vazquez a closed award of weekly wage-loss benefits from the date his employment was terminated until the date on which his illegal status was confirmed. The magistrate also ordered defendant to pay for all reasonable and necessary medical treatment of Vazquez' left shoulder pursuant to MCL 418.315.

The WCAC heard the appeal en banc and split on the proper construction of WDCA subsection 361(1). The majority addressed only the "commission of a crime" language in subsection 361(1) and held that this subsection operated to temporarily suspend payment of all weekly wage-loss benefits to Vazquez. Accordingly, the majority affirmed the magistrate's opinion with modification. The majority opined that its statutory interpretation discouraged further violations of the law by undocumented workers while keeping employers liable for paying the medical expenses of workers injured on the job.

The concurring commissioner would have found that Vazquez did not meet the threshold requirement of entering into a valid "contract of hire" as required by WDCA subsection 161(1)(*l*).

The commissioners who joined the dissenting opinion would have relied on the prior decision of the WCAC in *Sanchez* to reverse the magistrate's closing of the award.

Vazquez filed an application for leave to appeal to this Court, which this Court granted. We consolidated

these two appeals and accepted briefing from amicus curiae.

### III. ANALYSIS

The WDCA requires that employers provide compensation to employees for injuries suffered in the course of the employee's employment, regardless of who is at fault. MCL 418.301(1); *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561, 570; 592 NW2d 360 (1999); *Layman v Newkirk Electric Assoc, Inc*, 458 Mich 494, 502; 581 NW2d 244 (1998), overruled in part on other grounds in *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691; 614 NW2d 607 (2000). In return for this almost automatic liability, employees are limited in the amount of compensation they may collect, and, except in limited circumstances, may not bring a tort action against the employer. MCL 418.131; *Hoste, supra* at 570; Welch, Worker's Compensation in Michigan: Law & Practice (3d ed), § 1.2, pp 1-2 to 1-3.

The WDCA defines who is an "employee" in subsection 161(1)(*l*) and, by doing so, demonstrates which individuals have essentially traded the right to bring a tort action for the right to benefits. *Hoste, supra* at 570. Because the WDCA was intended as remedial legislation, it is liberally construed to grant, rather than deny, benefits. *Goff v Bil-Mar Foods, Inc (After Remand)*, 454 Mich 507, 511; 563 NW2d 214 (1997), overruled in part on other grounds in *Mudel, supra*.

We review de novo questions of law involved in final orders from the WCAC. *Mudel, supra* at 697, n 3, citing *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000).

A. CONSTRUCTION OF WDCA SUBSECTION 161(1)(*l*)

Our Supreme Court has held that the threshold inquiry in worker's compensation cases is whether the worker is an "employee" under subsection 161(1)(*l*), *Hoste, supra* at 571-573,[3] and we begin our analysis with this inquiry.

In subsection 161(1)(*l*), the Legislature defined "employee" as

[e]very person in the service of another, under any contract of hire, express or implied, including aliens; a person regularly employed on a full-time basis by his or her spouse having specified hours of employment at a specified rate of pay; working members of partnerships receiving wages from the partnership irrespective of profits; a person insured for whom and to the extent premiums are paid based on wages, earnings, or profits; and minors, who shall be considered the same as and have the same power to contract as adult employees. Any minor under 18 years of age whose employment at the time of injury shall be shown to be illegal, in the absence of fraudulent use of permits or certificates of age in which case only single compensation shall be paid, shall receive compensation double that provided in this act.

Whether plaintiffs in these cases are "employees" for purposes of the WDCA requires us to construe both the word "aliens" and the phrase "contract of hire" in the WDCA definition of "employees." The majority of the WCAC in *Sanchez* found no impediment from WDCA subsection 161(1)(*l*) to Sanchez' receipt of benefits. The WCAC members who joined the controlling opinion in *Vazquez* did not expressly reach this issue,

---

[3] The *Hoste* Court discusses subsection 161(1)(b), which was changed to 161(1)(*l*).

although their focus on subsection 361(1), an affirmative defense, indicates that they also found this threshold requirement satisfied. We, too, hold that plaintiffs are "employees" under the definition provided in WDCA subsection 161(1)(*l*).[4]

### 1. "ALIENS"

Defendant argues that the reference to "aliens" in the definition of "employee" in WDCA subsection 161(1)(*l*) does not support the conclusion that *illegal* aliens are entitled to benefits under the act. Defendant opines that the act is "silent" in this regard and that it therefore only makes sense to interpret the word "aliens" as referencing only legal aliens. We disagree with defendant's statutory construction.

When reviewing matters of statutory construction, this Court's primary purpose is to discern and give effect to the Legislature's intent. *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 748; 641 NW2d 567 (2002). The first criterion in determining legislative intent is the specific language of the statute. *Id.* The Legislature is presumed to have intended the

---

[4] The majority of other jurisdictions considering the issue have also determined that undocumented aliens are eligible for worker's compensation benefits. Most notably, the courts in California, Colorado, Florida, and North Carolina reached their conclusions on the basis of worker's compensation's statutes, which, like subsection 161(1)(*l*) of Michigan's act, expressly include "aliens" within their definitions of "employee." See *Del Taco v Worker's Comp Appeal Bd*, 79 Cal App 4th 1437, 1441; 94 Cal Rptr 2d 825 (2000), *Champion Auto Body v Industrial Claim Appeals Office*, 950 P2d 671, 673 (Col App, 1997), *Gene's Harvesting v Rodriguez*, 421 So 2d 701 (Fla App, 1982), and *Rivera v Trapp*, 135 NC App 296; 519 SE2d 777 (1999). However, these state statutes are not completely analogous to our state statute because they also specifically provide worker's compensation coverage to persons "whether lawfully or unlawfully employed." See Cal Labor Code 3351; Colo Rev Stat 8-40-202(1)(b); Fla Stat 440.02(15)(a); and NC Gen Stat 97-2(2).

meaning it has plainly expressed, and, if the expressed language is clear, judicial construction is not permitted and the statute must be enforced as written. *Id.*

This Court must apply the language of the statute as enacted, without addition, subtraction, or modification. *Lesner v Liquid Disposal, Inc*, 466 Mich 95, 101; 643 NW2d 553 (2002). This Court may not read anything into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. *Id.* In other words, the role of the judiciary is not to engage in legislating. *Id.* at 101-102.

Further, if the statute provides its own glossary, then the terms must be applied as expressly defined. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996). However, where a statute does not define a term, resort to a dictionary for a definition is appropriate. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002); *Lumley v Univ of Michigan Bd of Regents*, 215 Mich App 125, 130; 544 NW2d 692 (1996).

In WDCA subsection 161(1)(*l*), the Legislature included the word "aliens" within the definition of "employee" without the modifying adjectives "illegal" or "legal." Without modification, "alien" means only "[a] foreign born citizen who has not qualified as a citizen of the country," Black's Law Dictionary (6th ed), or "a foreign-born resident who has not been naturalized and who owes allegiance to another country," *Random House Webster's College Dictionary* (1991). The plain meaning of "aliens" thus includes not only foreign born citizens with documentation to work in the United States but also those without such documentation.

Further, the Legislature did not otherwise exclude undocumented aliens from the coverage of the WDCA. In contrast, the Legislature has explicitly excluded agricultural workers, MCL 418.115; domestic workers, MCL 418.118; real estate brokers, MCL 418.119; and foreign exchange students, MCL 418.161(1)(b), from the coverage of the act.

Therefore, we hold that by expressly including the word "aliens" in the definition of "employee," by failing to modify the word "aliens" with the adjective "illegal" or "legal," and by failing to otherwise exclude illegal aliens from the act's coverage, the Legislature intended to include undocumented aliens such as plaintiffs as "aliens" within the WDCA definition of "employee."

We turn to the remaining inquiry from WDCA subsection 161(1)(*l*), whether plaintiffs worked under a "contract of hire" for defendant.

### 2. "CONTRACT OF HIRE"

Defendant argues that because plaintiffs fraudulently misrepresented their employment status when seeking employment from defendant, plaintiffs did not enter into a valid contract of hire with defendant that would permit payment of worker's compensation benefits. We disagree.

Again, the threshold inquiry in worker's compensation cases is whether the worker is an "employee" under subsection 161(1)(*l*). *Hoste, supra* at 571-573. In pertinent part, subsection 161(1)(*l*) defines "employee" as "[e]very person in the service of another, under any contract of hire, express or implied . . . ." Hence, the presence of a "contract of

hire" is a precondition to receiving benefits under the WDCA.

The phrase "contract of hire" was first construed in *Higgins v Monroe Evening News*, 404 Mich 1; 272 NW2d 537 (1978), where the plaintiff, a five-year-old child, was injured while accompanying a substitute newspaper carrier on his newspaper route. The dispositive issue was whether the plaintiff was acting under a "contract of hire" with the substitute paper carrier and, thus, an employee for purposes of receiving benefits under the WDCA at the time he was struck by an automobile and seriously injured. *Id.* at 17-18.

Justice MOODY wrote the lead opinion of the Court and found that no "contract of hire" existed in the case before it because there had been no bargained for exchange. *Higgins, supra* at 20-21. The relationship between the newspaper carrier and the plaintiff was merely social, illustrating a gratuitous promise rather than a contract of hire. The newspaper carrier gratuitously promised to "give" the plaintiff a dime, bottle of pop, or candy if he helped in delivering the papers. *Id.* at 21. Justice MOODY found that to reach the conclusion that a contract of hire existed, each of the parties must have intended to suffer a detriment to receive a benefit and that each must have agreed to exchange those detriments and benefits. *Id.*

Subsequently, in *Hoste, supra*, where the plaintiff was a member of the National Ski Patrol System who suffered an injury while "forerunning" a course at a ski resort in advance of a race, the issue was also whether the plaintiff was an "employee" as defined in subsection 161(1)(*l*) of the WDCA. Our Supreme Court expressly approved of the magistrate's discussion of *Higgins* regarding the proper interpretation of the word "contract" in the phrase "contract of hire."

Because the plaintiff received privileges such as free skiing, complimentary hot beverages, and meal discounts in lieu of a regular income from the ski resort, the Court specifically considered the distinction between a "contract of hire" and a relationship that is contractual but not "of hire." The Court concluded that the plaintiff was not entitled to worker's compensation benefits because he was not an employee working under a "contract of hire" but a "gratuitous worker" or "individual assisting another with a view toward furthering his own interests." *Hoste, supra* at 578-579.

Applying *Higgins* and *Hoste* here, we hold that the "contract for hire" element of the WDCA definition of "employee" is satisfied and that plaintiffs were "employees" in the service of another. Plaintiffs agreed to perform certain work for defendant in exchange for wages, performed that work and received wages, and sustained injuries arising out of and in the course of this employment. Hence, defendant and plaintiffs intended to suffer a detriment to receive a benefit and each agreed to exchange those detriments and benefits. The parties' agreement was a "contract for hire" the WDCA was designed to cover.

Defendant's argument that there was no "meeting of the minds" is without merit. Mutuality of agreement, or a meeting of the minds, means that "[t]here must be a meeting of the minds on all the material facts in order to form a valid agreement, and whether such a meeting of the minds occurred is judged by an objective standard, looking to the express words of the parties and their visible acts." *Groulx v Carlson*, 176 Mich App 484, 491; 440 NW2d 644 (1989). Defendant's actions here, notably its receipt of plaintiffs' work, belie its claim that a meeting of the minds on

the material facts was not present here. A meeting of the minds can be found from performance and acquiescence in that performance.

To the extent that defendant also argues that fraud or fraud in the inducement voids any "contract of hire" that could impose on it an obligation to pay plaintiffs worker's compensation benefits, this argument does not offer defendant the relief it seeks. Defendant relies on traditional contract law for this argument because the WDCA is silent, with certain inapplicable exceptions,[5] on the effect of a false representation.

However, where the WDCA is silent on the effect of a false representation, our Supreme Court has not turned to principles of contract law, such as the fraud and fraud in the inducement principles offered by defendant here, but has instead upheld the award of benefits to the injured employee. In *Dressler v Grand Rapids Die Casting Corp*, 402 Mich 243, 257; 262 NW2d 629 (1978), where the plaintiff misrepresented his preexisting health condition in applying for employment but did not suffer from an occupational disease, see MCL 418.431, the Court held the following:

> While we can appreciate defendant employer's frustration at having employed plaintiff under a false belief arising from his misrepresentation, and now being held liable for his worker's compensation benefits, as well as plaintiff employee's compulsion to misrepresent in order to secure a livelihood, the fact of the matter is that [MCL 418.431] does not permit the employer to avoid compensation payments.

---

[5] See MCL 418.431 (false representation about occupational disease), MCL 418.383 (false representation in a notice of injury or claim), and MCL 418.222(6) (false representation made in an application for benefits).

In *Dressler*, Justice COLEMAN, in a separate opinion, argued that "[i]t strains credibility to conclude that the Legislature deliberated and decided to permit misrepresentation in single injury/aggravation cases and not permit it in occupational disease cases," *id.* at 260, but the majority did not adopt Justice COLEMAN's reasoning. Hence, although *Dressler* concerns a different type of representation by an employee, the majority opinion in *Dressler* instructs that where the WDCA is silent on the effect of a false representation, an award of benefits is not precluded by the misrepresentation.

In summary, we hold that the employment agreements between plaintiffs and defendant constituted a "contract of hire" as is required by subsection 161(1)(*l*) to establish the employer-employee relationship. Because the WDCA is silent on the effect of a false representation, an award of benefits to plaintiffs is not precluded by their misrepresentations about their immigration status.

Having determined that including plaintiffs as "employees" in the service of another under a contract of hire who, in order to obtain compensation for work-related injuries, are not only eligible but also required to invoke the remedy provided by the WDCA, we next turn to the question whether wage-loss benefits to plaintiffs must nonetheless be suspended under the "commission of a crime" language in subsection 361(1).

### B. CONSTRUCTION OF WDCA SUBSECTION 361(1)

Defendant argues that plaintiffs are not entitled to weekly wage-loss benefits in light of section 361 of the act, which absolves an employer of liability for

such periods wherein the employee is unable to work "because of the commission of a crime." We agree.

The WDCA provides for suspension of weekly wage-loss benefits when the employee is unable to obtain or perform work because of imprisonment or commission of a crime.[6] Subsection 361(1) of the act provides in pertinent part the following:

> While the incapacity for work resulting from a personal injury is partial, the employer shall pay, or cause to be paid to the injured employee weekly compensation equal to 80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage which the injured employee is able to earn after the personal injury, but not more than the maximum weekly rate of compensation, as determined under section 355. Compensation shall be paid for the duration of the disability. However, an employer shall not be liable for compensation under section 351, 371(1), or this subsection for such periods of time that the employee is unable to obtain or perform work because of imprisonment or *commission* of a crime. [Emphasis added.]

As noted above, we are to read statutes for their plain meaning. See *Robertson, supra.* Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, considering the context in which the words are used. MCL 8.3a; *Roberston, supra* at 748. If the legislative intent cannot be determined from the statute itself, then a court may consult dictionary definitions. *Koontz, supra; Lumley, supra.*

The last sentence of subsection 361(1) was added in 1985 (1985 PA 103). Before this legislation, a crimi-

---

[6] WDCA subsection 361(1) applies only to "weekly compensation." Defendant remains responsible to pay for plaintiffs' reasonable and necessary medical treatments pursuant to MCL 418.315.

nal conviction would not have disqualified a worker from receiving wage-loss benefits. See, e.g., *DeMars v Roadway Express, Inc*, 99 Mich App 842; 298 NW2d 645 (1980). A worker could draw benefits even while in prison. *Sims v R D Brooks, Inc*, 389 Mich 91; 204 NW2d 139 (1973). The amendment of subsection 361(1) was obviously intended to change the law and to require a connection between an employee's ability to work for his employer and his eligibility for wage-loss benefits. *Sweatt v Dep't of Corrections*, 247 Mich App 555, 578-579; 637 NW2d 811 (2001) (GRIFFIN, J., dissenting).

Subsection 361(1) does not require *conviction* of a crime but precludes benefits when the worker is imprisoned or has *committed* a crime and is unable to obtain or perform work because of the commission of a crime. There is no statutory definition of "commission." The *Random House Webster's College Dictionary* (2000) defines "commit" as "to do; perform; perpetrate." Therefore, subsection 361(1), when plainly read, does not require a person to be convicted or even to be formally charged with a crime.

Further, no restrictions are placed in subsection 361(1) concerning when the "crime" must be committed or whether it must be a violation of a particular code. Rather, the plain language of the statute applies whenever commission of a "crime" prevents the person from obtaining or performing work. Fortunately, a longstanding definition of that word is provided in our statute books. MCL 750.5 provides the following definition of "crime":

"Crime" means an act or omission forbidden by law which is not designated as a civil infraction, and which is

punishable upon conviction by any 1 or more of the following:

(a) Imprisonment.

(b) Fine not designated a civil fine.

(c) Removal from office.

(d) Disqualification to hold an office of trust, honor, or profit under the state.

(e) Other penal discipline.

This statutory definition provides no basis for limiting the scope of subsection 361(1) to state crimes. There can be no doubt that the word "crime" as used in subsection 361(1) refers to federal as well as state crimes.

The decision by the United States Supreme Court in *Hoffman Plastic Compounds, Inc v Nat'l Labor Relations Bd*, 535 US 137; 122 S Ct 1275; 152 L Ed 2d 271 (2002), is highly instructive here. Both of these appeals involve federal crimes, and the highest court in the land speaks with authority when it comes to determining what is a federal crime and when a violation has occurred.

In *Hoffman, supra,* Jose Castro, born in Mexico, was hired by the petitioner on the basis of false documents that appeared to verify his authorization to work in the United States. Following a union-organizing campaign, Castro and others were laid off. The National Labor Relations Board found the layoffs to be an unfair labor practice and ordered back pay for Castro and others. On review, the Supreme Court held that the federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986 (IRCA), foreclosed the board from awarding back pay to an undocumented alien who has

never been legally authorized to work in the United States.

Writing for the majority of the Court, Chief Justice Rehnquist explained:

> In 1986, . . . Congress enacted IRCA, a comprehensive scheme prohibiting the employment of illegal aliens in the United States. § 101(a)(1), 100 Stat 3360, 8 USC 1324a. As we have previously noted, IRCA "forcefully" made combating the employment of illegal aliens central to "[t]he policy of immigration law." *INS v Nat'l Center for Immigrants' Rights, Inc*, 502 US 183, 194, n 8; 112 S Ct 551; 116 L Ed 2d 546 (1991). It did so by establishing an extensive "employment verification system," § 1324a(a)(1), designed to deny employment to aliens who (a) are not lawfully present in the United States, or (b) are not lawfully authorized to work in the United States, § 1324a(h)(3). . . .
>
> Similarly, if an employer unknowingly hires an unauthorized alien, or if the alien becomes unauthorized while employed, the employer is compelled to discharge the worker upon discovery of the worker's undocumented status. § 1324a(a)(2). Employers who violate IRCA are punished by civil fines, § 1324a(e)(4)(A), and may be subject to criminal prosecution, § 1324a(f)(1). IRCA also makes it a crime for an unauthorized alien to subvert the employer verification system by tendering fraudulent documents. § 1324c(a). It thus prohibits aliens from using or attempting to use "any forged, counterfeit, altered, or falsely made document" or "any document lawfully issued to or with respect to a person other than the possessor" for purposes of obtaining employment in the United States. §§ 1324c(a)(1)-(3). Aliens who use or attempt to use such documents are subject to fines and criminal prosecution. 18 USC 1546(b). *There is no dispute that Castro's use of false documents to obtain employment with Hoffman violated these provisions. [Id.* at 147-148 (emphasis added).]

As in *Hoffman*, it is undisputed that plaintiffs here acquired and presented false documentation in order

to obtain employment with defendant. Hence, in each case, the magistrate appropriately suspended weekly wage-loss benefits from the time the crime affected plaintiffs' ability to work until such time as authorized documentation to work could be acquired.

In *Sanchez*, after taking note of plaintiff's admitted use of an invalid social security card, the magistrate stated, "I take judicial notice of the fact that working in the United States without a valid Social Security card or work visa is illegal." Similarly, in *Vazquez*, the magistrate declared, "there was no question at trial regarding the illegal status of Mr. Vazquez. He testified he illegally purchased his fake Social Security card and alien resident card on the streets of Chicago." The magistrate again took judicial notice of the fact that "working in the United States without a valid Social Security card, or without permission of the United States government, is illegal." She found that "Mr. Vazquez's illegal status prevents Eagle Alloy from deciding to take him back or attempt to find him work elsewhere."

In *Sanchez*, a panel of the WCAC reversed this result by a two-to-one vote. Subsequently, in *Vazquez*, a majority of the seven-member appellate commission sitting en banc affirmed the magistrate's ruling with modification.

We hold that the magistrate correctly reasoned that plaintiffs' admitted use of fake documents to obtain employment constituted "commission of a crime." We further hold that the magistrate correctly reasoned that when defendant learned of plaintiffs' employment status and could not legally retain them as employees or find them other work, plaintiffs became unable to obtain or perform work "because of" the

commission of crime within the meaning of subsection 361(1). This construction most accurately reflects the two-pronged language of the statute, requiring not only the commission of a crime but also that the employee is unable to work because of that crime. Further, this result is in accord with the policy of the federal government as set forth in *Hoffman*, as well as the policy of the state of Michigan indicated by the Legislature's adoption of the last sentence of subsection 361(1).

Accordingly, in *Sanchez*, Docket No. 238003, we reverse the part of the WCAC's decision that granted weekly wage-loss benefits to Sanchez beyond the date on which his employment status was discovered and affirm the grant of benefits before that date. Applying the same reasoning to *Vazquez*, Docket No. 239592, we reverse the part of the WCAC's decision that denied plaintiff Vazquez weekly wage-loss benefits up to the date on which his employment status was confirmed and affirm the part denying benefits after that date. If plaintiffs obtain proper permission to live and work in the United States, then subsection 361(1) would no longer operate to suspend their wage-loss benefits.

IV. CONCLUSION

In *Sanchez*, Docket No. 238003, we affirm the holding of the WCAC that Sanchez is an "employee" for purposes of the WDCA. We reverse the part of the WCAC's decision that granted weekly wage-loss benefits to Sanchez beyond the date on which his employment status was discovered and affirm the grant of benefits before that date.

In *Vazquez*, Docket No. 239592, in which the WCAC expressly addressed only the proper construction of subsection 361(1), we reverse the part of the WCAC's decision that denied Vazquez weekly wage-loss benefits up to the date on which his employment status was confirmed and affirm the part denying benefits after that date.