CITY OF ROYAL OAK v SOUTHEASTERN OAKLAND COUNTY
RESOURCE RECOVERY AUTHORITY

Docket No. 236139. Submitted June 11, 2003, at Detroit. Decided July 31,
2003, at 9:00 A.M.

The city of Royal Oak brought an action in the Oakland Circuit Court
against the Southeastern Oakland County Resource Recovery
Authority (SOCRRA), a waste disposal authority, seeking to perma-
nently enjoin SOCRRA from developing a golf course on the surface
of a closed landfill. The city argued that development of the golf
course exceeded SOCRRA's statutory authority to collect or dispose
of waste under MCL 123.301 *et seq.* The city and SOCRRA both
moved for summary disposition, and the trial court, Fred M.
Mester, J., granted SOCRRA's motion for summary disposition. The
city appealed.

The Court of Appeals *held*:

MCL 123.301 *et seq.* allows municipalities to combine to form a
waste disposal authority and authorizes such an authority to con-
struct a golf course as an appropriate end use for a completed
landfill. In addition to providing for the collection or disposal of
waste, MCL 123.301, the statute further provides that a waste dis-
posal authority "shall possess all the powers necessary to carry out
the purposes of its incorporation, and those incident thereto." MCL
123.303. The city's argument that any incidental powers are limited
to those necessary to the exercise of the expressly granted powers
fails, because such an interpretation would render the "incident
thereto" clause nugatory. Although a golf course is not a necessary
component of a landfill closure, because such power may be fairly
implied from, or is closely related to, the SOCRRA's expressly granted
authority to dispose of waste, the authority to develop the pro-
posed golf course is "incident to" the SOCRRA's express authority.
The record revealed that golf course development is a nationally
recognized, environmentally sound, and economically efficient
means of closing a landfill. In that sense, developing the golf
course is closely related to the proper landfilling of waste, which
includes having sound closure plans. The trial court properly
granted summary disposition in favor of SOCRRA.

Affirmed.

MUNICIPAL CORPORATIONS — GARBAGE OR RUBBISH COLLECTION OR DISPOSAL
    AUTHORITIES — LANDFILL CLOSURES — GOLF COURSES.
    The statute that allows municipalities to combine to form a waste dis-
    posal authority, also authorizes, as a power incident to the express
    authority to dispose of waste, such waste disposal authority to con-
    struct a golf course as an appropriate end use for a completed
    landfill. (MCL 123.301 and 123.303.)

*Kitch Drutchas Wagner Denardis & Valitutti* (by
*Susan Healy Zitterman, Michael J. Watza,* and
*Christina A. Ginter*) for the city of Royal Oak.

*Barris, Sott, Denn & Driker, P.L.L.C.* (by *Stephan
E. Glazek, Eric S. Rosenthal,* and *Kevin Kalezynski*),
for the Southeastern Oakland County Resource
Recovery Authority.

*Adkison, Need & Allen, P.L.L.C.* (by *Gregory K.
Need*), for the city of Rochester Hills.

Before: OWENS, P.J., and BANDSTRA and MURRAY, JJ.

BANDSTRA, J. This case presents an issue of first
impression concerning the construction of a statute
that allows municipalities to combine to form a waste
disposal authority, MCL 123.301 *et seq.* We conclude
that this statute also authorizes such an authority to
construct a golf course as an appropriate end use for
a completed landfill.

### BASIC FACTS AND BACKGROUND

Plaintiff city of Royal Oak, along with other area
municipalities, formed defendant Southeastern Oak-
land County Resource Recovery Authority (SOCRRA) in
1951. The authority's articles of incorporation state
that SOCRRA's purpose is "the collection and/or dispo-
sal of garbage and rubbish" as authorized by the ena-

bling statute under which it was formed, MCL 123.301. For a number of years, SOCRRA operated a landfill for the disposal of waste materials. When the landfill reached capacity, SOCRRA decided to close the landfill and develop a nine hole golf course on its surface.[1]

Royal Oak brought this lawsuit seeking to permanently enjoin SOCRRA from proceeding with that development, arguing that the statutory grant of waste disposal authority to SOCRRA did not authorize such a development. Both Royal Oak and SOCRRA filed cross-motions for summary disposition. The trial court granted SOCRRA's motion and denied Royal Oak's motion, leading to this appeal.

### THE STATUTE

As noted, the statute provides for the collection or disposal of garbage or rubbish, MCL 123.301, and that was the purpose for which SOCRRA was incorporated. The statute further provides that a waste disposal authority like SOCRRA "shall possess all the powers necessary to carry out the purposes of its incorporation, and those incident thereto." MCL 123.303. Further, "[f]or the purposes of its incorporation, [a waste disposal] authority may acquire private property . . .

---

[1] The golf course project had been the subject of previous discussions and votes by the SOCRRA board. Citing the doctrines of laches and estoppel, as well as the limitation periods applicable to shareholder derivative suits and claims for breach of a fiduciary duty, defendants point out that the Royal Oak representative on that board repeatedly voted in favor of the golf course project and argue that Royal Oak cannot now complain about the golf course. Our determination that Royal Oak's substantive complaint against the golf course development is without merit makes it unnecessary to consider defendants' arguments in this regard.

and may hold, manage, control, sell, exchange or lease such property." MCL 123.304.

### ANALYSIS

Statutory interpretation is a question of law that is reviewed de novo on appeal. *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). "Statutory language should be construed reasonably, keeping in mind the purpose of the statute." *Rose Hill Ctr, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997). Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, considering the context in which the words are used. *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 748; 641 NW2d 567 (2002); *Tyler v Livonia Pub Schools*, 459 Mich 382, 390-391; 590 NW2d 560 (1999). If the statute provides its own glossary, the terms must be applied as expressly defined. *Barrett v Kirtland Community College*, 245 Mich App 306, 314; 628 NW2d 63 (2001). Otherwise, if the legislative intent cannot be determined from the statute itself, a court may consult dictionary definitions. *Sanchez v Eagle Alloy, Inc*, 254 Mich App 651, 668; 658 NW2d 510 (2003). In construing a statute, a court should presume that every word has some meaning and should avoid any construction that would render any part of a statute surplusage or nugatory. *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561, 574; 592 NW2d 360 (1999).

Applying these principles to the statutory language quoted above, we first reject Royal Oak's argument that, in addition to powers expressly granted by the statute, SOCRRA was only granted other powers to the extent they are necessary or essential to the exercise of those expressly granted powers. In making this argument, Royal Oak relies on cases construing statutory schemes other than that at issue here. See, e.g., *City of Lansing v Edward Rose Realty*, 442 Mich 626, 632-634; 502 NW2d 638 (1993) (condemnation and home rule cities statutes); *Hanselman v Wayne Co Concealed Weapon Licensing Bd*, 419 Mich 168, 186-190; 351 NW2d 544 (1984) (concealed weapons licensing board statute); *Michigan Muni Liability & Prop Pool v Muskegon Co Bd of Co Rd Comm'rs*, 235 Mich App 183, 190-192; 597 NW2d 187 (1999) (county road commission statute). In contrast, the statute at issue here is unique in that it provides a waste disposal authority "all the powers necessary to carry out the purposes of its incorporation," as well as "those [powers] incident thereto." MCL 123.303.

We agree with Royal Oak that a golf course is not a necessary or essential component of a landfill closure; landfills can certainly be properly closed without developing a golf course. Thus, we turn to an examination of whether SOCRRA's proposed development of a golf course is the exercise of a power "incident to" the power expressly granted by the statute to dispose of waste.

We begin by noting that the proposed golf course development may be "incident to" this power even though it is not necessary that a golf course be constructed to close the landfill. To read the statute as requiring that a power be "necessary" for the imple-

mentation of the authority expressly granted in order to be "incident thereto" would read the "incident thereto" clause of the statute out of existence. We will not interpret a statute in a manner that renders any of its language meaningless or nugatory. *Hoste, supra.*

The statute does not define "incident thereto," so we may turn to dictionary definitions for guidance. *Sanchez, supra.* The phrase "incident to" means "closely related to; naturally appearing with." Garner, *A Dictionary of Modern Legal Usage* (2d ed), p 430.

We find further guidance in *Bowler v Nagel,* 228 Mich 434; 200 NW 258 (1924). There, the Supreme Court considered whether the power conferred to a city to establish a civil service system allowed the establishment of a pension retirement system for city employees. Although the statute at issue in *Bowler* did not itself grant powers "incident to" those expressly granted, the Court noted authorities establishing that it is sufficient if a legislatively delegated power is " 'fairly implied in or incident to the powers expressly granted' " in enacted legislation. *Id.* at 440, quoting 1 Dillon on Municipal Corporations (5th ed), § 237. The Court held that provision of a pension retirement system was a power incident to the power expressly granted to establish a civil service system, reasoning that

> [pension] payments are provided for in laws like that before us in the belief on the part of those favoring their enactment that the city is benefited thereby, that more efficient service is rendered, and that the long continuous service necessary to bring the employees within its provisions justifies its payment as an economic proposition. [*Bowler, supra* at 440-441.]

The record in this case clearly establishes that a golf course is a nationally recognized end use for completed landfills. As in other states, Michigan's environmental protection scheme requires the owner of a landfill to conduct postclosure care of the site for at least thirty years. 1993 AACS, R 299.4449. For that period, the landfill owner must maintain the integrity and effectiveness of the landfill's final cover, i.e., the layer of soil and grass covering and protecting the buried waste against settling and erosion, and maintain and operate the site's monitoring wells and leachate collection system to prevent pollution of the ground water, air, and surrounding properties. *Id.* The proposed golf course meets these requirements as shown by the fact that the Michigan Department of Environmental Quality has approved its use here as part of a postclosure care plan. Further, SOCRRA presented evidence below establishing that the cash flow resulting from developing the golf course[2] will be used by SOCRRA to pay the annual costs of maintaining the landfill site consistent with these environmental regulations. Finally, Royal Oak does not contest the fact that a golf course would provide a welcome recreational opportunity to the surrounding community, albeit not to Royal Oak.

---

[2] SOCRRA's plan is to develop the golf course and lease it to another entity for operation. Royal Oak's argument is that SOCRRA does not itself have the statutory authority to develop the golf course, although another entity that leased the landfill could. Royal Oak's concession in this regard seems to belie its argument; the express statutory grant of authority to lease property specifies that any lease must be "[f]or the purposes of [a waste disposal authority's] incorporation." MCL 123.304. If SOCRRA's development of the golf course is not for the purpose of its incorporation, i.e., waste disposal, as Royal Oak argues, we fail to see how leasing the property to another entity for that same development would be for that purpose either.

In light of this record, we conclude that the power to develop the proposed golf course is "incident to" the express power granted to SOCRRA to dispose of waste, just as the power to establish a pension retirement system was incident to the expressly granted authority to establish a civil service employment system in *Bowler, supra.* Golf course development is a nationally recognized and often used means of closing a landfill because it is an environmentally sound, economically efficient approach that also benefits the surrounding community by providing an aesthetically pleasing area of recreation. In that sense, developing the proposed golf course is "closely related to" the proper landfilling of waste. Garner, *supra.* The statute authorizes the disposal of waste, including by means of landfills, and landfills require closure plans that often, for sound reasons, involve golf course developments.

We conclude that SOCRRA was statutorily granted the authority to develop the proposed golf course as a power "incident to" its expressly granted authority to dispose of waste. The trial court did not err in granting summary disposition to defendants.[3] We affirm.

---

[3] Although, as Royal Oak argues, this was not the reasoning employed by the trial court in granting summary disposition to defendants, we affirm summary dispositions properly granted, even if they were granted for the wrong reason. *Taylor v Laban,* 241 Mich App 449, 458; 616 NW2d 229 (2000).