NOTE: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

---

**RADAR INDUSTRIES, INC.,**
*Plaintiff-Appellant,*

**v.**

**CLEVELAND DIE & MANUFACTURING COMPANY
AND CLEVELAND DIE OF MEXICO,**
*Defendants-Appellees.*

---

2010-1335

---

Appeal from the United States District Court for the Eastern District of Michigan in case no. 08-CV-12338, Senior Judge Lawrence P. Zatkoff.

---

Decided: March 30, 2011

---

MICHAEL F. WAIS, Howard & Howard Attorneys PLLC, of Royal Oak, Michigan, for plaintiff-appellant. Of counsel were GREGORY D. DEGRAZIA and MICHAEL O. FAWAZ.

ROBERT C.J. TUTTLE, Brooks Kushman P.C., of Southfield, Michigan for defendants- appellees. With him on the brief were ROBERT C. BRANDENBURG and JOHN E. NEMAZI.

---

Before LOURIE, LINN, and DYK, *Circuit Judges*.

DYK, *Circuit Judge*.

Radar Industries, Inc. ("Radar") sued Cleveland Die & Manufacturing Co. and Cleveland Die of Mexico (collectively "Cleveland Die") for infringing U.S. Patent Nos. 5,435,661 ("'661 patent") and 5,559,810 ("'810 patent"), which are both directed to "Clevis Link" technologies. The allegedly infringing clevis links were manufactured by Cleveland Die for Standard Products, Inc. ("Standard Products"). The district court granted summary judgment for Cleveland Die on the ground that Radar was foreclosed from any claim for damages under 35 U.S.C. § 287(a) for failing to give notice with respect to the allegedly infringing clevis links that were produced "for or under" a have made license agreement that Radar granted to Standard Products. *Radar Indus., Inc. v. Cleveland Die & Mfg. Co.*, No. 08-CV-12338, 2010 WL 777077, at *4–7 (E.D. Mich. Oct. 4, 2010). Because we conclude that a license existed that enabled Cleveland Die to make the allegedly infringing clevis links for Standard Products, Cleveland Die did not infringe the '661 and '810 patents, rendering any lack of notice irrelevant. Accordingly, we affirm judgment for defendants.

BACKGROUND

Radar owns the asserted '661 and '810 patents, both of which are directed to "clevis links." Clevis links are used in a variety of manufacturing contexts, including in automobile manufacturing where they connect the automotive radiator to the engine. The patented clevis links are considered an improvement over the prior art because they are stamped from a single piece of sheet metal rather than forged from heavier metals, making them more

economical and lightweight.  As depicted below, a clevis link 10 connects with a tie bar 18 to form a linkage assembly 12:



In the early-1990s, General Motors contracted with Standard Products to produce a linkage assembly, consisting of a tie bar and a clevis link.  Standard Products awarded a contract for the production of the tie bar to Radar, but awarded a contract for the production of the clevis link to Cleveland Die's predecessor, Tool Producers.  In 1994, Tool Producers began supplying clevis links to Standard Products.

Around 1995, Radar's Vice President and owner, Mark Zmyslowski, notified Standard Products that the '661 patent covered Tool Producers' clevis links.  However, Gary O'Keefe, Standard Products' buyer, informed Zmyslowski that if he ever asserted the patent, Radar would lose the more profitable tie bar business.  Radar then allegedly granted Standard Products a "Right to Have Made" license ("Have Made license") to have the clevis links of the '661 patent and later the '810 patent manufactured on its behalf.  In return, Standard Products allegedly assured Radar that it would be given the first opportunity to replace Tool Producers if Tool Producers ever ceased production of the clevis links.  This agreement

was never memorialized in writing, and the parties now dispute whether an agreement was ever reached.[1]

In 2001, Cleveland Die purchased the assets of Tool Producers from National City Bank in foreclosure proceedings. These assets included the "contract, records and tooling for making a clevis link for [Standard Products]." J.A. 152. Soon after, Cleveland Die succeeded Tool Producers in supplying links to Standard Products. Cleveland Die ceased production of the accused clevis links when Standard Products found another supplier for the links around July 2007. Apparently, early in 2008, Radar lost the contract for providing the tie bars to Standard Products. On May 31, 2008, Radar sued Cleveland Die, alleging infringement of the '661 and '810 patents.

On August 20, 2009, Cleveland Die moved for summary judgment that the accused links were not properly marked under 35 U.S.C. § 287(a), which requires a patent holder to mark all patented articles sold "for or under" it in order to obtain infringement damages.[2] Cleveland Die

---

[1] Apparently, in 1999, Standard Products was acquired by a company called Cooper Standard. For convenience, we refer to Standard Products as the entity in question.

[2] 35 U.S.C. § 287(a) provides, in relevant part:

Patentees . . . making, offering for sale, or selling . . . any patented article *for or under* them . . . may give notice. . . that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent . . . . In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.

contended that Standard Products (and accordingly Cleveland Die) was licensed by Radar under the alleged Have Made license. Radar, on the other hand, contended that neither Standard Products nor Cleveland Die sold clevis links "for or under" Radar because, contrary to its earlier position, a Have Made agreement never in fact existed. The district court granted summary judgment on March 4, 2010, concluding that Standard Products was licensed and that the patent notice statute foreclosed any claim for damages in recovery of all relief sought in the infringement action. *Radar*, 2010 WL 777077, at *7. In addition, the district court denied Radar leave to amend its complaint to add additional clevis links that it believed were infringing. *Radar Indus., Inc. v. Cleveland Die & Mfg. Co.*, No. 08-CV-12338, slip op. at 1 (E.D. Mich. Jan. 15, 2010) [hereinafter *Denial of Discovery Motions and Motion for Leave*]. It also denied several discovery motions, denying Radar leave to engage in additional discovery after the passage of the discovery deadline. *Id.* Radar timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

We review grants of summary judgment de novo. *Nartron Corp. v. Schukra U.S.A. Inc.*, 558 F.3d 1352, 1355 (Fed. Cir. 2009). A denial of a motion to amend is reviewed for abuse of discretion. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008).

---

35 U.S.C. § 287(a) (emphasis added). Persons make or sell patented articles "for or under" a patentee when the patentee has expressly or impliedly authorized them to do so. *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994).

DISCUSSION

I

The arguments of the parties in this case are unusually convoluted. The question of whether Radar was obligated to mark the clevis links under § 287(a) depends entirely on whether Radar authorized Standard Products to produce the clevis links (i.e. whether Standard Products had an express or implied license). If Standard Products was authorized, there is no need to address the notice issue. An express or implied license is a defense to infringement. *See Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995).

The district court did not err in finding that there was a license. In *De Forest Radio Telephone & Telegraph Co. v. United States*, 273 U.S. 236, 241 (1927), the Supreme Court held that a patent license did not require a formal written agreement:

> No formal granting of a license is necessary in order to give it effect. Any language used by the owner of the patent or any conduct on his part exhibited to another, from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license, and a defense to an action for a tort.

Here, the undisputed facts establish that Radar licensed Standard Products to have another party manufacture the asserted clevis links. In a March 2010 response brief, Radar stated that "[Plaintiff] offered its stamped clevis links covered by its patent application to Standard Products" and that "[u]ltimately, [Plaintiff] reached an agreement with Standard Products wherein [Plaintiff] granted Standard Products a right to have made . . . the patented clevis links." J.A. 21. In his August 2009 deposition

testimony, Radar's Vice President and owner, Zmys-
lowski, confirmed this:

A.  [When I told Standard Products about the
    '661 patent], Gary got very upset and . . .
    said if you try to enforce your patent I will
    pull the . . . tie bar from you, which was
    worth much more money than the clevis
    link. . . . *I agreed to allow them to run the
    clevis as designed*, as long as the initial
    clevis link would only be run by Tool Pro-
    ducers and if for any reason . . . it ceased
    to be produced by Tool Producers or they
    wanted to pull the business from Tool
    Producers, that I would be able to run . . .
    the clevis link.

Q.  *And that was agreed to by Mr. O'Keefe [Stan-
    dard Products' buyer]?*

A.  *Yes.*

    . . . .

A.  *I allowed Standard Products to let Tool
    Producers produce the clevis link . . .*

Q.  Okay.  And the reason you allowed that
    was because of the threat to pull the tie
    bar bracket business?

A.  That is correct.

J.A. 1073–74 (emphases added).[3]   Indeed, both parties
performed as though such an agreement existed.  Tool
Producers produced the asserted clevis links for Standard
Products, and Radar never again asserted its patents
against Standard Products until the commencement of

---

[3]   Even in its appellate brief, Radar stated that, it
"reached what *Radar believed* was an agreement with
Standard Products . . . ." Appellant's Br. 9.

this action.  In return, Radar enjoyed substantial consideration from the sales of the more profitable tie bar business.  *See, e.g.*, *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1292 (Fed. Cir. 2008) ("[W]hen a contract is ambiguous, conduct of the parties which indicates the construction that the parties themselves placed on the contract may . . . be considered in determining the parties' true intent.") (quotation marks and citations omitted); *Sanchez v. Eagle Alloy, Inc.*, 658 N.W.2d 510, 517 (Mich. Ct. App. 2003) (stating that, under the applicable contract law of Michigan, a meeting of the minds "can be found from performance and acquiescence in that performance"); *see also* Restatement (Second) of Contracts § 202(5) (1981) (noting the import of the parties' course of performance and course of dealing to an agreement).

## II

Radar nonetheless contends that genuine issues of material fact remain as to whether a Have Made license agreement existed, arguing that (1) a declaration from a Standard Products engineer, Bernie Rice, shows no meeting of the minds occurred; (2) Cleveland Die previously took a contradictory position that no agreement existed; and (3) a September 2009 declaration from Zmyslowski states that no agreement ever existed and that, even if one did exist, it would only have covered one clevis link model.  As we now discuss, none of these assertions raises a genuine issue of material fact.

First, Radar contends that no meeting of the minds occurred because Cleveland Die, in a motion on laches, submitted a declaration from an employee named Bernie Rice, which stated:

> Because of my relationship with this product and the investigation I undertook for Standard Products regarding [the '661 patent], *I should be aware*

> of any communications and agreements regarding the clevis link supply and Radar's claims to have patent coverage of the clevis link. I have reviewed the Declaration of Mark Zmyslowski. *Standard Products made no assurance, as alleged in paragraph 5 of the declaration, that "if Tool Producers ever ceased to manufacture the stamped clevis link for Standard Products that Radar would be offered the opportunity to [replace Tool Producers]."* The reason this is not correct is covered in my letter of March 30, 1996 where it is clear that [Tool Producers' part did not infringe].[4]

J.A. 542 (emphases added). The district court erroneously dismissed this declaration and did not give it "evidentiary weight" because of its "unsworn" nature. *Radar*, 2010 WL 777077, at *5. In fact, because the declaration was made "under penalty of perjury," it is equivalent to an affidavit and can support or oppose a motion for summary judgment. 28 U.S.C. § 1746. The declaration, nonetheless, does not raise a genuine issue of fact. Rice only disputed the accuracy of paragraph 5 of Zmyslowski's statement, which stated: "I was assured by Standard Products if Tool Producers ever ceased to manufacture the stamped clevis link for Standard Products[,] that Radar would be offered the opportunity to provide the stamped clevis link designed and developed at Radar." J.A. 422. Therefore, Rice's declaration only bears on whether Radar had a right to replace Tool Producers in the event Tool Producers ceased production of the clevis links. It does not refute the existence of a Have Made license agreement. The declaration thus fails to create a genuine issue of fact as to whether a license agreement actually existed.

---

[4] The March 30, 1996, letter, which was written in response to Radar's assertion of the '611 patent, concluded that "none of [the claims of the '661 patent] appl[ies] to the Tool Producers part." J.A. 1621.

Second, Radar points out that Cleveland Die previously took the position that no license agreement existed. In support of its April 14, 2009, laches motion, Cleveland Die stated that "there is no proof of [an] agreement, *merely hearsay*." J.A. 532 (emphasis added). We agree with the district court that this statement does not raise a genuine issue of fact. This statement merely restates a legal theory developed during an early stage of litigation and was submitted months before the close of discovery. Cleveland Die was not an original signatory to the agreement. Moreover, Cleveland Die's denial of an agreement preceded Zmyslowski's August 6, 2009, deposition testimony in which he repeatedly stated that there was an agreement. Under these circumstances, we think the district court properly declined to find that Cleveland Die's earlier legal position raised a genuine issue of material fact. *See, e.g.*, *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 812 (Fed. Cir. 1999) ("Factual assertions by counsel in motion papers, memoranda, briefs, or other such 'self-serving' documents, are generally insufficient to establish the existence of a genuine issue of material fact at summary judgment.") (quoting *Nieves v. Univ. of P.R.*, 7 F.3d 270, 276 n.9 (1st Cir. 1993)).

Third, Radar points to Zmyslowski's September 2009 declaration as evidence that no agreement existed. There, Zmyslowski stated that "Radar has never offered a license to any party to produce clevis links covered by the '661 Patent." J.A. 1607. However, Zmyslowski's September 2009 declaration directly contradicts his August 2009 deposition testimony and his March 2009 declaration in which he affirmed the existence of a license agreement. J.A. 422, 1073–76. Under applicable Sixth Circuit law, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460

(6th Cir. 1986). Thus, Zmyslowski's declaration does not raise a genuine issue of fact.

Finally, Radar maintains that any agreement it made pertained only to a single clevis link and did not extend to (1) two infringing links identified by Cleveland Die in its interrogatories ("Two Interrogatory Links"); or (2) later-discovered additional links that were made for entities other than Standard Products ("Other Links"). Radar's only evidence for this assertion is Zmyslowski's September 2009 declaration, which states that the agreement "related to one single clevis link." J.A. 1607. However, Radar offers no other evidence that the agreement pertained to only a single clevis link. It is well-settled law that a party opposing summary judgment "must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985). Here, we conclude that Zmyslowski's declaration was wholly conclusory and insufficient to raise a factual dispute as to whether the agreement covered the Two Interrogatory Links or the Other Links.[5]

---

[5] Radar may suggest that the Have Made license lapsed because Standard Products breached the agreement by allowing Tool Producers' successor-in-interest (Cleveland Die) to supply the clevis links to Standard Products, rather than allowing Radar to supply the links when Tool Products ceased production. If so, this issue has not been sufficiently briefed to preserve it. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312 (Fed. Cir. 2006) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Especially not when the brief presents a passel of other arguments . . . . Judges are not like pigs, hunting for truffles buried in briefs.")); *see also Anderson v. City of Boston*, 375 F.3d 71, 91 (1st Cir. 2004) ("When a party includes no developed argumentation on a point, . . . we treat the argument as waived under our well established

Because we hold that Standard Products had a Have Made license, its suppliers, including Cleveland Die, cannot be sued for infringement with respect to any accused products made for Standard Products.

## III

Radar also challenges the denial of several discovery motions and its motion for leave to amend its complaint. These motions were all filed in response to Radar's belief that Cleveland Die was intentionally withholding information about additional, allegedly-infringing clevis links. In response to an interrogatory asking it to "[i]dentify by make, internal designation, part number and/or model number each and every Clevis Link sold or offered for sale by You," Cleveland Die disclosed model numbers for the accused models made for Standard Products. J.A. 929–30. However, during a deposition on July 22, 2009, Cleveland Die's President acknowledged that it still sold clevis links to other companies that shared similar characteristics to the invention of the patents-in-suit. Because Radar believed that Cleveland Die deliberately withheld information about these Other Links, it filed several motions, including motions for discovery sanctions, to compel discovery, and to extend discovery to uncover more information about these Other Links. Radar also sought to amend its complaint to add the Other Links. The district court, nonetheless, dismissed Radar's discovery motions, stating that:

> . . . Plaintiff knew since the outset of this litigation that Defendants produced additional clevis

rule."); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a 'settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

links. Defendants' 2007 website contained a picture featuring clevis links other than those mentioned in its response to Plaintiff's interrogatory, including those mentioned by [Cleveland Die's President] in his deposition. Plaintiff was aware of this picture in 2007. . . . Despite this knowledge, Plaintiff failed to challenge the sufficiency of Defendants' December 2, 2008, interrogatory response until August 6, 2009. Based on this evidence, Plaintiff has failed to show that despite its diligence, it could not meet the original discovery deadline.

*Denial of Discovery Motions and Motion for Leave*, slip op. at 6. The district court also denied the motion to amend the complaint on the grounds that: "Amending the complaint after the close of discovery and after the dispositive motion deadline, and requiring Defendants to respond to entirely new and distinct claims, would be unfairly prejudicial to Defendants and unduly delay trial." *Id.*, slip op. at 8–9. We see no error in the district court's rulings.[6]

## AFFIRMED

---

[6] Radar also challenges the district court's grant of partial summary judgment for Cleveland Die, dismissing Counts IV and VI of Radar's complaint, related to infringement of the '810 patent. During the course of litigation, it was discovered that the '810 patent listed an incorrect priority date. Radar thus filed a certificate of correction. The district court nonetheless dismissed the claims because it found that "the ['810] clevis link was sold more than one year prior to its effective filing date and . . . the certificate of correction for which Plaintiff has applied would only have prospective application." *Radar Indus., Inc. v. Cleveland Die & Mfg. Co.*, 632 F. Supp. 2d 686, 694 (E.D. Mich. 2010). In view of our holding that a Have Made license agreement existed and applied to the '810 patent, we need not address whether the dismissal of Counts IV and VI was proper.